*Walters, et al., v. Kemp, et al.,*
CA No. 1:20cv1624-SCJ

# STATE DEFENDANTS'

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Lisa Walters, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>Brian Kemp, et al., )<br>)<br>Defendants. ) | Civil Action No.<br>1:20cv1624-SCJ |

## DECLARATION OF SERGEANT FIRST CLASS GARY LANGFORD

1.

My name is Gary Langford, and I am *sui juris* and competent to testify in this matter. I give this declaration as evidence in the above-styled case and for any other lawful purpose. I make this declaration based upon my personal knowledge. To the extent that I have relied on written materials, they are identified in this declaration. To the extent that I have made a statement summarizing the content of the information that I have reviewed, I have attempted to state the information drawn from those materials as accurately as I can for the purpose of making this declaration and any errors are inadvertent.

2.

I am a Sergeant First Class for the Georgia State Patrol, which is a division of the Georgia Department of Public Safety (DPS). DPS is comprised of the Georgia State Patrol, Georgia Capitol Police and the Motor Carrier Compliance Division, with 1,071 law enforcement officers posted in regions across the State of Georgia. In the capacity as a firearms instructor for DPS, my responsibilities include providing training to State Troopers, Motor Carrier Officers, and Capitol Police Officers regarding their responsibilities as law enforcement officers.

3.

Each year I conduct training for Capitol Police Officers, State Troopers, and Motor Carrier Officers regarding the weapons carry laws.

4.

Under O.C.G.A. § 16-11-137, a person carrying a weapon shall not be subject to detention for the sole purpose of investigating whether such person has a weapons carry license.

5.

I instruct the DPS law enforcement officers assigned to the Capitol that they may not detain an individual for the sole purpose of investigating whether that individual has a Georgia weapons carry license.

6.

DPS law enforcement officers are taught that they should treat every encounter with an individual possessing a weapon as though that individual has a Georgia weapons carry license.

7.

DPS law enforcement officers patrolling Capitol Square do not investigate whether or not an individual has a Georgia weapons carry license <u>unless</u> the officer has a minimum of reasonable, articulable suspicion that a crime is being committed or has been committed, which crime is always separate from any weapons carry license violation.

8.

Officers at the Capitol have been instructed that when members of the public carry weapons inside the Capitol, up to the screening checkpoint, those individuals have a right to retreat to put the weapon(s) back in their vehicle. Officers do not ask whether the individual with a weapon has a Georgia weapons carry license.

9.

State Troopers are similarly instructed that they are not to detain someone to investigate whether that individual has a Georgia weapons carry license. They are instructed that if they pull over a vehicle, and the driver or passenger has a weapon,

the traffic stop alone is *not* sufficient to investigate whether or not the individual has a Georgia weapons carry license, even if the individual has exited the vehicle with their weapon.

10.

State Troopers and MCCD Officers do not investigate whether or not a motorist has a Georgia weapons carry license during a traffic stop for minor traffic violations. In a motorist's vehicle, § 16-11-126 does not require a weapons carry license by persons not prohibited by law to possess the weapon. If a weapon is possessed by an occupant of the vehicle and the reason for the stop escalates, then the DPS officers may further investigate the lawfulness of possession of the weapon. With escalations, a citation for violation of §16-11-126 is generally a lesser included charge. For example, an escalation would arise when an occupant's status would make the possession of the weapon illegal, including possession by a convicted felon (§ 16-11-131), or possession by a minor under the age of 18 (§ 16-11-132). An escalation could also arise when there is reasonable articulable suspicion or probable cause of other criminal activity, such as possession during the commission of certain crimes (§ 16-11-106), which would include theft of the motor vehicle.

11.

Under the provisions of O.C.G.A. § 16-11-126(h)(2), a person is deemed to have committed the offense of carrying a weapon without a license when he or she carries a weapon without a valid weapons carry license except under the specifically enumerated exceptions set out in O.C.G.A. § 16-11-126(a) through (g). For purposes of preparing this affidavit, I obtained and reviewed records kept in the ordinary course of business of the Georgia Department of Public Safety, to determine how many times an individual has been cited for a violation of O.C.G.A. § 16-11-126(h)(2) during the past two calendar years

12.

During the past two years, neither the Georgia Capitol Police nor the Motor Carrier Compliance Division has issued any citations for violation of O.C.G.A. § 16-11-126.

13.

For the last two years, the Georgia State Patrol has issued 14 citations for the offense of carrying a weapon without a license in violation of O.C.G.A. § 16-11-126.[1]

---

[1] The fourteen are citation numbers E03162598, E03247026, E03332702, E03162592, E03040952, E03188351, E03337959, E03162589, E02989877,

14.

From my review of incident report DPS00001533, three of those fourteen citations (citation numbers E03162598, E3162592 and E03162589) were issued to one individual at the time of a single arrest on March 6, 2019. That individual was initially stopped after being observed travelling at a speed of 75 miles per hour in a 55 mile per hour zone.

15.

In each of the instances when one of the twelve individuals received a citation for the offense of carrying a weapon without a valid weapons carry license, citations were issued for other distinct offenses which resulted in an arrest.[2]

---

E03148772, E03200821, E03523639, E03248892, E03088555 issued from August 28, 2018 to March 17, 2020.

[2] DPS Incident report 00001533 – fourteen citations issued, three for the offense of carrying a concealed weapon without a permit
DPS Incident report 00006722 – three citations issued
DPS Incident report I100247381 – six citations issued
DPS Incident report 00001530 – six citations issued
DPS Incident report 000016462 – eleven citations issued
DPS Incident report 000015916 – thirteen citations issued
DPS Incident report 000024703 – two citations issued
DPS Incident report I100235064 – six citations issued
DPS Incident report 000009122 - seven citations issued
DPS Incident report 00041098 – eight citations issued
DPS Incident report 000007463 – five citations issued
DPS Incident report I100245561 – three citations issued

16.

In each of the instances when one of the twelve individuals received a citation for the offense of carrying a weapon without a weapons carry license, the underlying cause of the traffic stop was the suspected commission of a separate and distinct criminal offense, which resulted in an arrest.[3]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct.

This 22nd day of April, 2020.

/s/Gary Langford
GARY LANGFORD

---

[3] *Id.*