# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| LISA WALTERS, an individual; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-01624-SCJ |
| BRIAN KEMP, in his official capacity as the Governor of Georgia; GARY VOWELL, in his official capacity as Commissioner of the Department of Public Safety and Colonel of the Georgia State Patrol; THE COUNTY OF CHEROKEE; and KEITH WOOD, in his official capacity as Judge of the Probate Court of Cherokee County, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF CHEROKEE COUNTY'S <u>MOTION TO DISMISS</u>

Comes now, CHEROKEE COUNTY, GEORGIA, and files this, its Brief in Support of its Motion to Dismiss showing the Court as follows:

# I. <u>STATEMENT OF THE CASE</u>

O.C.G.A. 16-11-129(a)(1) authorizes the judge of the probate court of each county to issue a weapons carry license or renewal license (hereinafter a "GWL") upon proper application by qualified individuals. Doc. 1, ¶15. On or about March 14, 2020, Defendant Keith Wood, Judge of the Probate Court of Cherokee County, Georgia suspended the processing of licenses for GWLs during the COVID-19 health crisis. Doc. 1, ¶28.

On April 16, 2020, Plaintiffs filed their Complaint against the County and other Defendants, including Keith Wood, Judge of the Probate Court of Cherokee County, alleging, among other claims, that the failure to accept, process and approve applications for a GWL during the pending COVID-19 health crises violates Plaintiffs' rights under the Second Amendment to the United States Constitution. (See, Doc.1).

As against Cherokee County, Plaintiffs seek the following remedies:

1. A declaration that "Cherokee County's Order" and "related enforcement policies, practices and customs" violate Plaintiff's Second and Fourteenth Amendment rights to keep and bear arms, including the right to keep and bear "loaded, operable, handguns, on their person…." (Doc. 1, ¶58);

2. Injunctive relief prohibiting Cherokee County from refusing to accept and process GWL applications and to issue GWLs to qualified persons (or, alternatively, injunctive relief requiring Cherokee County to accept and process GWL applications and to issue GWLs to qualified persons) (Doc. 1, ¶61);

3. An award of "nominal damages" (Doc. 1, ¶62); and

4. Attorney fees.

As demonstrated below, Plaintiffs cannot recover as to any of those claims against Cherokee County.

## II. ARGUMENT AND CITATION TO AUTHORITY

### A. MOTION TO DISMISS – STANDARD OF REVIEW

#### 1. Subject Matter Jurisdiction

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." McElmurray v. Consol. Gov't of Augusta-Richmond Cty., 501 F.3d 1244, 1251 (11th Cir. 2007). If the challenge is facial, the court must consider the allegations of the complaint to be true for the purposes of ruling on the motion— similar to the standard for evaluating a motion to dismiss under Rule 12(b)(6). Id. The court must also view the allegations in the light most favorable to

the non-moving party. See Kinnett v. Strayer Educ., Inc., 501 F. App'x 890, 892 (11th Cir. 2012) ("At the motion to dismiss stage, [the court] accept[s] all well-pleaded facts as true, and construe[s] the reasonable inferences therefrom in the light most favorable to the plaintiff.") (citing Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)).

### 2. Failure to State a Claim

In evaluating a motion to dismiss under Rule 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Tryalor v. P'ship Title Co., LLC 491 F. App'x 988, 989 (11th Cir. 2012) "[A] plaintiff's obligation to provide the grounds of his entitlement to relief[, however,] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal punctuation omitted). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement.") (quoting Twombly, 550 U.S. at 557); Dusek v. JPMorgan Chase & Co., 832 F. 3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss,... legal conclusions without adequate factual

support are entitled to no assumption of truth.") (internal punctuation and citations omitted).

    **B.**    **PLAINTIFFS LACK STANDING TO BRING THIS ACTION AGAINST THE COUNTY**.

It is well-recognized that standing is a threshold question in every federal case, determining the power of the court to entertain the suit. CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006). It is equally well-recognized that a plaintiff has **standing** to sue only if: (1) he has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) a causal connection exists between the injury and the defendants' conduct; and (3) it is likely - not merely speculative - that a favorable judicial decision will redress the plaintiff's injury. Lujan v. Defenders of Wildlife, 504 US 555, 560-61 (1992). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Flat Creek Transportation, LLC v. Fed. Motor Carrier Safety Admin., 923 F.3d 1295, 1300 (11th Cir. 2019).

Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of the claim, no matter how weighty or interesting the claim may be. See Lewis v. Governor of

Alabama, 944 F.3d 1287, 1296 (11th Cir. 2019). Plaintiffs cannot establish standing to bring this action against Cherokee County.

### 1. There Is No Causal Connection Between The Injuries Alleged To Be Suffered By The Plaintiffs And Cherokee County.

In order to satisfy the "causal connection" requirement of standing, "the injury must be 'fairly ... trace[able]' to the defendant's conduct, as opposed to the action of an absent third party." Lewis v. Governor of Alabama, 944 F.3d 1287, 1296 (11th Cir. 2019).

Each county in Georgia is a "body corporate and politic with such governing authority and with such powers and limitations as are provided in this Constitution and as provided by law. Ga. Const. Art IX, Sec. I, Para. I. Thus, counties, like Cherokee, "can exercise no powers except such as are expressly given or necessarily implied from express grant of other powers." DeKalb Cty. v. Atlanta Gas Light Co., 228 Ga. 512, 513 (1972).

The power to accept applications for and grant GWLs was granted by the legislature to probate judges in each county of Georgia. Specifically, O.C.G.A. §16-11-129(a)(1) provides, in relevant part, that "[t]he **judge of the probate court** of each county may, on application … issue a weapons carry license...." (emphasis

added).  Nowhere in O.C.G.A. §16-11-129 is a County given the authority to issue a weapons carry license.  Further, there is no provision elsewhere in the Georgia Code or in the Georgia Constitution granting to Cherokee County (or to any other County in the state of Georgia) the authority to issue GWLs.

As relates to the claims against Cherokee County, Plaintiffs' Complaint alleges that the Plaintiffs are suffering an injury as a result of Judge Wood's refusal to accept applications for GWLs or to issue GWLs.  Specifically, Plaintiffs allege that "Judge Wood of the Cherokee County Probate Court issued a 'Notice to the Public' suspending all processing of carry license applications for two months, through May, 2020 ("CPO")."  Doc 1, ¶ 28.  It is this Notice to the Public, or the CPO, which Plaintiffs allege cause them harm.  Doc 1, ¶¶42, 46, 55. Although Plaintiffs characterize such conduct as the conduct of **both** Judge Wood and Cherokee County (see Doc. 1, ¶¶ 33, 42, 47, 55, 58, and 61), Cherokee County lacks any authority to issue GWLs or to dictate the manner in which Judge Wood performs his statutory duties as judge of the probate court.  In fact, the only defendant in this action with authority to issue a GWL is Judge Wood; likewise, it was Judge Wood who issued the CPO upon which Plaintiffs' claims against Cherokee County are based.  See Doc. 1., ¶33.

As Plaintiffs cannot establish a causal connection between any action of Cherokee County and the injuries they allege to have suffered, Plaintiffs lack standing to bring their claims against Cherokee County. Accordingly, the Complaint cannot proceed against the County.

### C. THERE IS NO CASE OR CONTROVERSY BETWEEN PLAINTIFFS AND CHEROKEE COUNTY.

Under Article III, § 2, of the Constitution, the federal courts have jurisdiction over this dispute between appellants and appellees only if it is a "case" or "controversy." This is a "bedrock requirement." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). "As we said in Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976): 'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" Raines v. Byrd, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317, 138 L. Ed. 2d 849 (1997)(citing to Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)).

1. **There Is No "Actual Controversy" Between Plaintiffs And Cherokee County Sufficient To Authorize Declaratory Judgment.**

In addition to the constitutional limitation of the jurisdiction of all Article III courts to "cases" and "controversies", the Declaratory Judgment Act, 28 U.S.C. §2201, permits federal courts to declare the rights of parties only in cases involving an "actual controversy."[1] The statutory standard for determining whether an "actual controversy" exists within the meaning of the Declaratory Judgment Act is the same as that under the "case or controversy" requirement of the Constitution. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937); Cutaiar v. Marshall, 590 F.2d 523, 527 (3d Cir. 1979); Cass County v. United States, 570 F.2d 737, 739 (8th Cir. 1978); Super Products Corp. v. D P Way Corp., 546 F.2d 748, 753 (7th Cir. 1976).

The Supreme Court has defined a "controversy" in the Constitutional sense as one that is appropriate for judicial determination. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It

---

[1] The **Declaratory Judgment Act**, 28 U.S.C. §2201, provides in pertinent part:

> "In a case of **actual controversy** within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought...." (Emphasis added.)

must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.  Hendrix v. Poonai, 662 F.2d 719, 721 (11th Cir. 1981)

The Eleventh Circuit has recognized that in all cases asserting claims under the Declaratory Judgment Act – such as this one - "the threshold question is whether a justiciable controversy exists." Atlanta Gas Light Co. v. Aetna Casualty & Surety Co., 68 F 3d. 409, 414 (11th Cir., 1995). "Congress limited federal jurisdiction under the Declaratory Judgment Act to **actual controversies**, in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete 'cases or controversies.' " Id. (emphasis added).

Any party who invokes a federal court's authority to render a declaratory judgment "must show, at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the **defendant's** conduct…." Id.  In other words, it must be the conduct of the defendant, not some other party, that has caused the plaintiff harm.

### a. Cherokee County Lacks Authority to Accept, or Issue GWLs

As noted in Section B.1. above, Cherokee County lacks authority to accept or issue GWLs, such power having been granted exclusively to probate courts. See, DeKalb Cty., 228 Ga. at 513 ("[C]ounties can exercise no powers except such as are expressly given or necessarily implied from express grant of other powers").

Here, even if this Court gives Plaintiffs precisely what he asked for — a declaratory judgment stating that the *County*'s failure to accept and process an application for GWL violated Plaintiffs' Second Amendment rights - that relief, alone, would not actually address his alleged harm or completely resolve the case, because Cherokee County lacks authority to issue a GWL. Plaintiff would still need to seek, and obtain, relief against Judge Wood. See Sundy v. Friendship Pavilion Acquisition Co., LLC, No. 19-11391, 2020 WL 1228757, at *3–4 (11th Cir. Mar. 13, 2020).

### b. Cherokee County Has No Supervisory Power over Judge Wood

Probate Judges in Georgia, like Judge Wood, are one of four "county officers" created by the Georgia Constitution. Article IX, Sec. 1, Para. III of the Georgia Constitution creates the positions of the clerk of the superior court, the judge of the probate court, sheriff and tax commissioner for each county in the State. Although elected and serving in only one county, these county offices, often referred to as

11

"constitutional officers" are not employees of the County. Griffies v. Coweta County, 272 Ga. 506, 507 (2000).

The duties of the judge of the probate court are defined by state law. Specifically, probate judges have duties, as enumerated in various state statues: O.C.G.A. §15-9-30(a)(10) to handle the administration of estates; O.C.G.A. §15-9-30(b)(10) to handle related to certain administrative functions related to public officials, issue marriage licenses, hear traffic cases (when there is no state court), and to hold criminal commitment hearings; O.C.G.A. §15-9-30.1 though §15-9-30.9, to conduct trails for certain misdemeanors; and O.C.G.A. §16-11-129, to issue weapons carry and renewal licenses.

As a county officer, the probate judge's budget is subject to control of the county commission, however, the county has no authority to dictate to the probate judge the manner in which he spends his budget or performs his duties. Griffies, at 508.

Accordingly, Cherokee County cannot dictate to Judge Wood the manner in which he performs his duties. Even if, for the sake of argument, Cherokee County issued an order suspending the issuance of GWLs, such order would not be binding upon Judge Wood in the performance of his duties. In short, Cherokee County

cannot interfere with Judge Wood in the performance of his statutorily defined duties. See Chaffin v. Calhoun, 262 Ga. 202, 203 ("And although the county commission has the power and the duty to issue a budget, the county commission may not dictate to the sheriff how that budget will be spent in the exercise of his duties.").

Because Cherokee County is without authority to dictate the method in which the Judge performs his duties, the entry of any order against Cherokee County would not provide the sought-after relief to the Plaintiff, as it is Judge Wood, not Cherokee County, who decides how in what manner to perform his statutorily authorized duties, including the issuance of GWLs. Because relief against Cherokee County would not remedy the harm alleged to have been suffered by Plaintiffs, the Plaintiffs cannot show an "actual controversy" between them and Cherokee County sufficient to invoke this Court's jurisdiction. Accordingly, the claims for declaratory and injunctive relief against Cherokee County should be dismissed.

### D. **ALL OF PLAINTIFFS' FEDERAL CLAIMS AGAINST CHEROKEE COUNTY ARE BARRED AS THE ALLEGED CONSTITUTIONAL VIOLATIONS DO NOT ARISE OUT OF A POLICY, PRACTICE OR CUSTOM OF CHEROKEE COUNTY**

A county can be sued for damages or injunctive relief under § 1983 for a constitutional violation only if the county's policy or custom was the moving force behind the constitutional violation. *See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Because Plaintiffs' Complaint does not allege any policy or custom of Cherokee County as being the cause of the alleged constitutional deprivation, but instead alleges only that Judge Wood's failure to issue GWLs during the COVID-19 public health crisis is the cause of the deprivation, Plaintiffs' complaint against Cherokee County must fail.

Plaintiff alleges that Judge Wood's "Notice to the Public" suspending the processing of GWLs, and his subsequent refusal to issue the same to some of the Plaintiffs constitutes a violation of Plaintiffs right to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution entitling them to declaratory and injunctive relief arising through 42 USC §1983 (See, Doc. 1, ¶¶55, 58), nominal damages (See, Doc. 1, ¶62) and attorney fees and expenses of litigation (See, Doc. 1, ¶63).  Plaintiffs fail, however, to allege the existence of any custom, policy or practice **of Cherokee County** which

was the cause of the alleged deprivations of Plaintiffs' rights to exercise their Second Amendment rights or Plaintiffs rights to apply for a GWL.

Because Plaintiffs have failed to point to any policy or custom of Cherokee County which have caused or contributed to the Plaintiffs' inability to obtain GWLs, Plaintiffs' claims should be dismissed pursuant to the doctrine enumerated in Monell.

**E.   STATE LAW CLAIMS, IF ANY, ASSERTED AGAINST CHEROKEE COUNTY ARE BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY**.

While Plaintiffs' complaint purports to assert only federal claims arising under 42 U.S.C. §1983, it appears, based upon the prayer for relief set forth in paragraph 61 of their Complaint, that Plaintiffs are seeking a mandatory injunction, under Georgia law, to compel Judge Wood and Cherokee County to accept and process applications for GWLs in accordance with the provisions of O.C.G.A. §16-11-129. To the extent such claim is a claim arising under the laws of the State of Georgia, it is barred by the doctrine of sovereign immunity.

The Georgia constitution provides that "sovereign immunity extends to the state and all of its departments and agencies" except to the extent the legislature enacts a specific waiver. Ga. Const. Art. I, § 2, ¶ IX(e). This sovereign immunity

extends to counties. <u>Gilbert v. Richardson</u>, 264 Ga. 744 (1994). Sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. Art. I, § 2, ¶ IX(e); *accord* O.C.G.A. § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute."). The Georgia Supreme Court has held that this sovereign immunity extends to actions seeking injunctive relief and to suits for declaratory relief, even when such claims allege a violation of a constitutional right. <u>Lathrop v. Deal</u>, 301 Ga. 408, 425, (2017).

As Plaintiff has alleged no act of the Georgia Genera Assembly which would operate as a waiver of sovereign immunity, to the extent Plaintiff seeks either injunctive relief or declaratory relief against Cherokee County arising under state law, such claims are barred by the doctrine of sovereign immunity.

**F.  INJUNCTIVE RELIEF IS BARRED BECAUSE PLAINTIFFS HAVE AN AVAILABLE STATE REMEDY**

Plaintiffs' Complaint seeks a preliminary and permanent injunction prohibiting Cherokee County from refusing to accept and process GWL applications and to issue licenses to qualified applicants, or, in the alternative, a preliminary and

permanent injunction requiring Cherokee County to accept and process GWL applications and to issue licenses to qualified applicants. (Doc 1, ¶61).

To the extent Plaintiffs' Complaint asserts a procedural due process claim arising from Judge Wood's temporary suspension of the issuance of GWLs, such claim is barred as there exists an adequate state remedy to address the deprivation. In <u>McKinney v. Pate</u>, 20 F. 3d 1550 (11th Cir. 1994), the 11th Circuit held that a procedural due process violation is not complete unless and until the State fails to provide due process. "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." <u>McKinney</u>, at 1557. The state law remedy of mandamus provides an aggrieved person with an adequate post-deprivation remedy sufficient to cure a procedural deprivation. See <u>Cotton v. Jackson</u>, 216 F. 3d 1328, 1333 (11th Cir 2000)("Because we believe that the writ of mandamus would be available under state law to Plaintiff, and because we believe that mandamus would be an adequate remedy to ensure that Plaintiff was not deprived of his due process rights… we conclude that Plaintiff has failed to show that inadequate state remedies

were available to him to remedy any alleged procedural deprivations. Therefore, Plaintiff has failed to state a claim for a procedural due process violation….")

Notably, O.C.G.A. §16-11-129(j) provides, in pertinent part, that:

> [w]hen an applicant is otherwise denied a license, temporary renewal license, or renewal license and contends that he or she is qualified to be issued a license, temporary renewal license, or renewal license, the applicant may bring an action in mandamus or other legal proceeding in order to obtain such license.

This right to bring a mandamus petition provides to the Plaintiffs an adequate state post-deprivation remedy and, as such, Plaintiffs cannot state a claim for a procedural due process violation. Accordingly, all claims alleging procedural due process violations must be dismissed.

### III. CONCLUSION

For all of the foregoing reasons, Cherokee County's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) should be GRANTED and all claims against Cherokee County DISMISSED.

Respectfully submitted, this 24th day of April, 2020.

**JARRARD & DAVIS, LLP**

/s/ *Patrick D. Jaugstetter*          .
ANGELA E. DAVIS
Georgia Bar No. 240126
adavis@jarrard-davis.com
PATRICK D. JAUGSTETTER
Georgia Bar No. 389680
patrickj@jarrard-davis.com
Attorneys for Defendant Cherokee County

222 Webb Street Cumming, Georgia 30040
(678) 455-7150 (telephone)
(678) 455-7149 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed BRIEF IN SUPPORT OF CHEROKEE COUNTY'S MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record:

I further certify that the above and foregoing meets the requirements set forth in L.R. 5.1(C) and has been prepared using Times New Roman 14-point font.

This 24th day of April, 2020.

                                       **JARRARD & DAVIS, LLP**

                                       /s/ *Patrick D. Jaugstetter*
                                       ANGELA E. DAVIS
                                       Georgia Bar No. 240126
                                       adavis@jarrard-davis.com
                                       PATRICK D. JAUGSTETTER
                                       Georgia Bar No. 389680
                                       patrickj@jarrard-davis.com
                                       Attorneys for Defendant Cherokee County

222 Webb Street
Cumming, Georgia 30040
(678) 455-7150 (telephone)
(678) 455-7149 (facsimile)