**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

LISA WALTERS, an individual;　　　　)
SECOND AMENDMENT　　　　　　　)
FOUNDATION; and　　　　　　　　　)
FIREARMS POLICY COALITION,　　　)
INC.,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　　Case No. 1:20-cv-01624-SCJ
　　　　　　　　　　　　　　　　　)
BRIAN KEMP, in his official capacity　)
as the Governor of Georgia; GARY　　)
VOWELL, in his official capacity as　　)
Commissioner of the Department of　　)
Public Safety and Colonel of the Georgia )
State Patrol; THE COUNTY OF　　　　)
CHEROKEE; and KEITH WOOD, in his )
official capacity as Judge of the Probate )
Court of Cherokee County,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　)

**CHEROKEE COUNTY, GEORGIA'S AND JUDGE KEITH WOOD'S
JOINT BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND/OR IN THE
ALTERNATIVE, ISSUANCE OF A PRELIMINARY INJUNCTION**

Come now, CHEROKEE COUNTY, GEORGIA, and JUDGE KEITH

WOOD and, files this, their Joint Brief in Opposition to Plaintiffs' Application for

Temporary Restraining Order and/or in the Alternative, Issuance of a Preliminary Injunction (hereinafter the "Application") accompanied and supported by the Affidavit of Judge Keith Wood attached hereto, and shows the Court as follows.

## I.     STATEMENT OF FACTS

As Judge of the Probate Court of Cherokee County, Judge Keith Wood (hereinafter "Judge Wood") is responsible for the operations of all functions of the Probate Court, including the management and supervision of his staff. (Wood Aff., ¶4).   In that capacity, Judge Wood is further responsible for the acceptance and review of applications for and the issuance of Georgia weapons carry permits ("GWLs") pursuant to O.C.G.A. §16-11-129.  (Wood Aff., ¶6).

### A. GWL Application Procedures

In order to process a new application for a GWL, it is necessary that the applicant be fingerprinted.   (Wood Aff., ¶7).   The collection of the applicant's fingerprint is done on a "live scan" fingerprinting machine located in the Probate Court's file room (Wood Aff., ¶8) by one of his employees in the Probate Court who is trained to perform such act. (Wood Aff., ¶9).    Judge Wood does not have a contract with any law enforcement agencies to collect fingerprints for GWL applications.   (Wood Aff., ¶9).

The standard practice and the practice necessary to in order to most effectively fingerprint an applicant requires the Probate Court employee to stand immediately next to the applicant, physically lay hands on the applicant's hands/fingers, guide the applicant's hands/fingers onto a glass plate, and roll each fingertip onto the glass plate. (Wood Aff., ¶10). This process takes, on average, three minutes per applicant. (Wood Aff., ¶11). Additionally, an applicant for both a new or renewal GWL is required to be photographed and to provide an electronic signature. (Wood Aff., ¶12). An applicants' photograph is likewise taken in the file room of the Probate Court and is performed by one of Judge Wood's employees in the Probate Court who is trained to perform such act. (Wood Aff., ¶13). In order to properly photograph an applicant, the employee sits approximately 3-4 feet from the applicant and takes the photograph using a USB computer camera attached to a desktop computer. (Wood Aff., ¶14). The GWL applicant cannot wear a mask when his/her photograph is taken. (Wood Aff., ¶15). A GWL applicant must then provide a signature on an electronic keypad using a common stylus available to all applicants. (Wood Aff., ¶16). Finally, a GWL applicant must review the information entered into the system to check for typographical errors and sign an acknowledgment that the information is correct. (Wood Aff., ¶18).

## B. Probate Court Facilities

The Probate Court facilities are relatively small and there is limited space available for employees and visitors, such as applicants for GWL's and individuals appearing in Probate Court for other purposes. (Wood Aff., ¶19). The limited space available in the Probate Court does not allow for the state-mandated social distancing rules to be followed (Wood Aff., ¶34). Further, the Probate Court lacks funds or resources to construct screens or other physical barriers that would serve to reduce the risk of spreading the coronavirus (Wood Aff., ¶34). Personal protective equipment such as masks and gloves, etc. are only available in limited supply for Probate Court employees. (Wood Aff., ¶34).

## C. Emergency Orders

On March 14, 2020, Judge Wood became aware that the Governor of the State of Georgia issued a State of Emergency in response to the public health crisis resulting from the COVID-19 pandemic (the "DOE"). (Wood Aff., ¶24, Ex. 1).

On March 14, 2020, Judge Wood became aware of the Declaration of State of Judicial Emergency as issued by the Chief Justice of the Supreme Court of Georgia (the "JEO"). (Wood Aff. ¶26, Ex. 2, 3). The JEO did not identify acceptance and processing of GWLs as an essential court function. (Wood Aff., ¶28, Ex. 2)

On March 16, 2020, Judge Wood received from the Judicial Qualifications Commission (the "JQC") a directive, stating that any judge who failed to follow the JEO could be subject disciplinary action before the JQC. (Wood Aff., ¶29, Ex. 4)

Further, on or about March 17, 2020, Judge Wood received a memorandum (the "CPJ Memorandum") from the Executive Committee of the Council of Probate Judges of Georgia (the "Council"). (Wood Aff., ¶30, Ex. 5). Pursuant to the CPJ Memorandum, the Council expressed its position that weapons carry licenses are not essential services under the JEO. (Wood Aff., ¶31).

**D. CDC Guidance**

Judge Wood reviewed the COVID-19 Interim Guidelines for Businesses and Employers issued by the Centers for Disease Control (the "CDC Guidelines") (Wood Aff., ¶32, Ex.6). Among the measures recommended in the CDC Guidelines are the following:

- Be prepared to change your business practices if needed to maintain critical operations (e.g., identify alternative suppliers, prioritize existing customers, or temporarily suspend some of your operations if needed).

- Identify alternate supply chains for critical goods and services. Some good and services may be in higher demand or unavailable.

- Talk with companies that provide your business with contract or temporary employees about the importance of sick employees staying home and encourage them to develop non-punitive leave policies.

- Talk with business partners about your response plans. Share best practices with other businesses in your communities (especially those in your supply chain), chambers of commerce, and associations to improve community response efforts. (Wood Aff., Ex. 6).

**E.** **Suspension of Acceptance and Procession of GWLs**

On or about March 14, 2020, and in reliance upon his review of the guidance provided to him by the JEO, as amended, the JQC Statement, the CPJ Memorandum, and the CDC Guidelines, Judge Wood determined that he could not allow the continued acceptance and processing of applications for GWLs while adequately protecting the health and safety of his employees and visitors to the Probate Court and in compliance with the various orders and rules. (Wood Aff., ¶33).

Judge Wood was concerned about the protection of the health and safety of his employees and visitors to the Probate Court, and considered the following factors:

- limited space available in the Court that would not allow for proper social distancing;

- a lack of funds or resources to construct screens or other physical barriers that would serve to reduce the risk of spreading the coronavirus;

- the fact that personal protective equipment, i.e.: masks, gloves, etc., are only available in limited supply for Probate Court employees; and

- the inability to collect fingerprints and take photographs without close physical contact and touching that would be in violation of the recommended social distancing between applicants and Probate Court staff.

Based upon the above-stated concerns, Judge Wood temporarily suspended the acceptance and processing of licenses for GWLs on March 14, 2020. (Wood Aff.,¶34, 35).

F. **Governor's Kemp's Shelter in Place Order**

On April 2, 2020, Judge Wood became aware of the Governor's Executive Order, imposing a mandatory shelter-in-place and establishing guidelines for "critical infrastructure" within the State of Georgia (the "SIP Order"). (Wood Aff., ¶36, Ex. 7). Judge Wood determined that he could not achieve the guidelines for

critical infrastructure employers as set forth in the SIP Order while accepting applications for GWLs, given the size and layout of the Probate Court, the resources available to the Probate Court, and the legal procedures required to accept applications for GWLs. (Wood Aff., ¶36).

Thus, in an effort to protect the health and safety of his employees and visitors to the Probate Court, and in reliance upon the DEO, the JEO, as amended, the JQC Statement, the CPJ Memorandum, the CDC Guidelines and the SIP Order, after April 2, 2020, Judge Wood determined to continue to suspend the acceptance of applications for GWLs until he could ensure that such applications could be accepted and processed in full compliance with the guidelines and instructions set forth in the DEO, the JEO, as amended, the JQC statement, the CDC Guidelines and the SIP Order. (Wood Aff., ¶38).

## II.  <u>ARGUMENT AND CITATION TO AUTHORITY</u>

The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits. <u>Schiavo ex rel v. Schindler v. Schiavo</u>, 403 F. 3d 1223, 1231 (11th Cir. 2005). A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits,

(2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, (2008).  In the 11th Circuit, an "injunction is an extraordinary and drastic remedy not to be granted, unless the movant clearly established the 'burden of persuasion' as to the four requisites."  Horton v. City of Augustine, 272 F. 3d 1318, 1326 (11th Cir. 2001).

The Plaintiffs cannot meet their burden in this regard.

## A. Plaintiffs Cannot Demonstrate a Likelihood Of Success On The Merits

In order to be entitled to a preliminary injunction, the Plaintiffs must show that they have a substantial likelihood of success on the merits of their claims. Review of Plaintiffs' Complaint shows that to demonstrate a likelihood of success on the merits of their claims against Cherokee County, Plaintiffs must show that they are likely to persuade this Court that the temporary suspension of the acceptance and processing of GWLs constitutes a violation of their rights as secured under the Second and Fourteenth Amendment to the United States Constitution.  This they cannot do.

Cherokee County and Judge Wood, simultaneously with the filing of this Brief, each filed a Motion to Dismiss and Brief in Support thereof. In order to avoid unnecessary duplication, Cherokee County and Judge Wood each adopts and incorporates each of the arguments and assertions contained in each of their Motions to Dismiss and Briefs in Support thereof as if fully set forth herein to demonstrate that Plaintiffs are not likely to succeed on the merits of their claims. Such arguments are summarized below:

1.     **Plaintiffs Lack Standing to Pursue their Claims**.

Standing is a threshold issue in every federal case (CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006)), and thus, it is appropriate that this issue be determined prior to ruling on Plaintiffs Application. Because Plaintiffs' Complaint fails to establish a "causal connection" between Plaintiffs' injury and Cherokee County's conduct, Plaintiffs lack standing and this Court lacks subject matter jurisdiction over the claims asserted against Cherokee County See Lewis v. Governor of Alabama, 944 F.3d 1287, 1296 (11th Cir. 2019.

2.     **There is No Case or Controversy Between Plaintiffs and Cherokee County**

Cherokee County has not adopted any order, or taken any action that could be interpreted to be in derogation of, or to interfere with, Plaintiffs' Second Amendment rights or Plaintiffs' rights, if any, to issuance of a GWL. The decision to suspend acceptance and processing of GWL applications was Judge Wood's decision, and Judge Wood's decision alone. Plaintiffs' Complaint does not allege any facts otherwise. As such, any injury or damage that Plaintiffs have suffered as a result of the suspension of the acceptance and processing of GWL applications is not causally connected to Cherokee County.

Further, Plaintiffs cannot satisfy the parallel requirement of an actual case or controversy necessary to permit this Court to grant declaratory relief under the Declaratory Judgement Act (28 U.S.C. §2201). See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937); Cutaiar v. Marshall, 590 F.2d 523, 527 (3d Cir. 1979); Cass County v. United States, 570 F.2d 737, 739 (8th Cir. 1978); Super Products Corp. v. D P Way Corp., 546 F.2d 748, 753 (7th Cir. 1976).

First, Cherokee County lacks authority to accept, or issue, GWLs. As a Georgia County, Cherokee County has only that power as is granted to it by the Georgia Constitution or by law; a county may not exercise any powers that are not

so granted. Ga. Const. Art IX, Sec. I, Para. I; <u>DeKalb Cty. v. Atlanta Gas Light Co.</u>, 228 Ga. 512, 513 (1972).

The power and duty to issue GWLs is granted exclusively to the probate judges of each county by O.C.G.A. §16-11-129(a)(1). There is no provision in Georgia law that authorizes Georgia Counties to issue GWLs. Thus, even if this Court declares that Plaintiffs are entitled to the issuance of a GWL *from the County*, or enters an injunction requiring Plaintiffs application to be accepted and processed *by the County*, such relief would be of no avail to Plaintiff as Cherokee County has no authority to take such action and any GWL issued by the County would be of no force or effect. <u>See</u> <u>Sundy v. Friendship Pavilion Acquisition Co., LLC</u>, No. 19-11391, 2020 WL 1228757, at *3–4 (11th Cir. Mar. 13, 2020).

Second, as a "county officer" whose office is created by the Article IX, Sec. I, Para. III of the Georgia Constitution, the probate judge is not an employee of the County (see <u>Griffies v. Coweta County</u>, 272 Ga. 506, 507 (2000)), and is not subject to the County's authority to dictate the manner in which he performs his duties. <u>Id</u>. at 508.

Accordingly, Cherokee County cannot direct Judge Wood in the manner in which he performs his duties, and no action taken by Cherokee County in that regard

would be binding upon Judge Wood. See <u>Chaffin v. Calhoun</u>, 262 Ga. 202, 203 ("And although the county commission has the power and the duty to issue a budget, the county commission may not dictate to the [county officer] how that budget will be spent in the exercise of his duties.").

Because Cherokee County is without authority to dictate the method in which the Judge performs his duties, the entry of any order against Cherokee County would not provide the sought-after relief to the Plaintiff, as it is Judge Wood, not Cherokee County, who decides how and in what manner to perform his statutorily authorized duties, including the issuance of GWLs. Relief against Cherokee County would not remedy the harm alleged to have been suffered by Plaintiffs, and therefore, the Plaintiffs cannot show an "actual controversy" between them and Cherokee County sufficient to invoke this Court's jurisdiction.

3. **Plaintiffs' Federal Claims Against Cherokee County Are Barred As The Alleged Constitutional Violations Do Not Arise Out Of A Policy, Practice Or Custom Of Cherokee County**

All of Plaintiffs' federal claims, including those for injunctive and declaratory relief, fail, as a matter of law, because Plaintiffs have failed to properly allege that

such claims arise out of a policy, practice or custom of Cherokee County. *See* <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).

### 4. <u>Injunctive Relief Is Barred Because Plaintiffs Have An Available State Remedy</u>

A plaintiff seeking injunctive relief arising from an alleged due process violation is not entitled to seek injunctive relief in the federal courts when there is an available post-deprivation remedy afforded in state courts. <u>McKinney v. Pate</u>, 20 F. 3d 1550 (11th Cir. 1994). The availability of relief in the form of mandamus is an adequate post-deprivation and where a plaintiff seeks injunctive relief without availing himself of such remedy, his complaint seeking injunctive relief fails to state a claim upon which relief may be granted. See <u>Cotton v. Jackson</u>, 216 F. 3d 1328, 1333 (11th Cir 2000).

Importantly, O.C.G.A. §16-11-129(j) permits an applicant who is denied a GWL to bring a mandamus action in order to obtain such GWL. Because the Plaintiffs failed to avail themselves of this remedy, the Complaint seeking injunctive relief fails to state a claim upon which relief may be granted.

### 5. <u>Plaintiffs Are Not Entitled To Any Relief Under §1983 As They Have Not Established A Deprivation Of A Federal Right.</u>

"By the plain terms of § 1983, … two allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also, e.g., Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) ("A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law.").

Plaintiffs' claims against Judge Wood and Cherokee County arise from Judge Wood's decision to suspend accepting applications for and issuing GWLs. Doc 1, ¶¶58, 61. Plaintiffs have, however, failed to demonstrate a 'federal right' in the issuance of a GWL.

State law rights are not enforceable under § 1983. See, e.g., Baker v. McCollan, 443 U.S. 137, 146 (1979); Estelle v. Gamble, 429 U.S. 97, 106 (1976); Voyticky v. Vill. of Timberlake, 412 F.3d 669, 678 (6th Cir. 2005) (intentional infliction of emotional distress does not itself give rise to § 1983 constitutional claim). Violations of state constitutional rights are not enforceable under § 1983. See, e.g., Armstrong v. Asselin, 734 F.3d 984, 989 (9th Cir. 2013); Radvansky v.

<u>City of Olmsted Falls</u>, 395 F.3d 291, 314 (6th Cir. 2005) ("[A] claimed violation of a state constitutional right is not cognizable under § 1983."); <u>Bookman v. Shubzda</u>, 945 F. Supp. 999, 1009 (N.D. Tex. 1996). Instead, to avail himself to relief under 42 U.S.C. §1983, a plaintiff must show that he has been deprived of rights, privileges or immunities **secured by federal Constitution or laws**. <u>Golden State Transit Corp. v. City of Los Angeles</u>, 493 U.S. 103, 105 (1989).

While Plaintiffs' right to bear arms is clearly a right secured by the Federal Constitution, Plaintiffs have made no showing, nor have they pled anything more than "legal conclusions without adequate factual support" that the temporary suspension of the processing or issuance of GWLs operates to deprive the Plaintiffs of any federally protected right.

O.C.G.A. §16-11-129 is a state permitting statute. It does not operate to grant to any applicant the "right to bear arms." That right is secured by the United States Constitution. Instead, O.C.G.A. §16-11-129 merely authorizes permit-holders to carry a particular type of firearm (specifically a loaded handgun) in certain locations in which such firearms are typically prohibited.

The United States Supreme Court has found a clear Second Amendment right to bear arms for purposes of self-defense, particularly in the home. <u>District of</u>

Columbia v. Heller, 554 U.S. 570, 628, 630. The Heller Court, however, further held that Second Amendment rights are not unlimited and recognized a list of presumptively lawful regulatory measures. Id. at 626-627, 627 n. 26. Neither Heller nor any other decision of the United States Supreme Court has found a federal right to the issuance of a permit to carry a loaded handgun in public.

O.C.G.A. §16-11-129 authorizes the issuance of a permit granting to qualified individuals the right to carry and possess loaded, operational handguns in public, a right not secured by the United States Constitution, or any other federal statute. Accordingly, a refusal to issue a GWL, or a decision by a probate judge to temporarily cease issuance of a GWL though perhaps a denial of right granted by state law, does not result in a deprivation of a federal right as necessary to support a claim under 42 U.S.C. §1983.

In addition to the jurisdictional prohibitions to Plaintiffs' claims, Plaintiffs cannot show that the temporary suspension of the acceptance and processing of GWL applications is a federal right – in the absence of such a federal right, Plaintiffs cannot obtain any relief, including injunctive relief, under 42 U.S.C. §1983. Accordingly, Plaintiffs cannot show a likelihood of success on the merits of their claims against Cherokee County.

**B. <u>Plaintiffs are not likely to suffer irreparable harm</u>**

A showing of irreparable harm is a necessary prerequisite to the grant of a temporary injunction. <u>Winter</u>, 555 U.S. at 20.

Georgia law allows persons to possess a weapon or a long gun inside their homes, cars, and place of business without a license; a long gun without a license as long as it is carried openly and fully exposed; and a handgun without a license as long as it is in a case and unloaded. O.C.G.A. § 16-11-126(a) - (c). Thus, under state law, Plaintiff is afforded the ability to possess a long gun without a license if carried openly and fully exposed. Likewise, Plaintiffs' right to carry a handgun outside of her home, car, or business without a license is only curtailed by state law to the extent that the handgun must be in a case and unloaded. Plaintiff is free to carry her loaded firearm without license at her home, in her car, and at her place of business.

Further, the suspension of the issuance of GWLs is a **temporary** measure taken in response to the guidance and precautions aimed at slowing the spread of the COVID-19 virus – there is no reason to expect that these restrictions will be long lasting or permanent. For these reasons, Plaintiffs cannot demonstrate irreparable harm resulting from the temporary suspension of processing applications for GWLs.

**C. <u>The balance of equities does not tip in favor of Applicant.</u>**

Judge Wood temporarily suspended the issuance of GWLs as a result of his inability to ensure the health, safety, and welfare of his employees engaged in the application process, applicants for GWLs and others appearing in Probate Court.

In 1905, the United States Supreme Court recognized that States may permissibly interfere with rights secured by the United States Constitution when so doing is necessary for the common good. See Jacobson v. Massachusetts, 197 U.S. 11 (1905) ("The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed…essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted…."). In Jacobson, the Court upheld a Massachusetts statute mandating vaccination against the smallpox virus. Even acknowledging a level of uncertainty about the safety and effectiveness of such vaccinations, the Court upheld the mandatory vaccination as a proper exercise of the police power. Likewise, while there may be questions about the effectiveness of the cautionary measures which ultimately led to Judge Wood's decision to temporarily suspend processing GWL applications, his decision, undertaken in an effort to fulfill his "duty" to "keep in view the welfare, comfort, and safety of the many, and not permit the interests of the many to be subordinated to the wishes or conveniences of the few"(Id. at 29) serves

the public interest in the same manner as the Massachusetts statute requiring vaccinations at issue in <u>Jacobson</u>.

Because Judge Wood has acted to protect the health and safety of his employees, and the public at large, in the face of an unprecedented public health emergency, and because Plaintiffs cannot show either that they are suffering any irreparable  harm or that they are being deprived of any constitutionally protected rights, the equities tip strongly in favor of denying the Application.

**D. <u>Granting the Injunction will Harm the Public Interest</u>.**

As demonstrated by the widespread imposition of physical distancing measures and other measures designed to limit in-person contact during the COVID-19 crisis (including the Governor's Shelter-in-Place Order, the Declaration of Judicial Emergency, and the CDC Guidelines), it can hardly be argued that requiring Judge Wood's staff to accept and process applications for GWLs (especially given the close physical contact necessary to process such applications) serves the public interest.  In fact, the public interest is best served by complying with the social distancing and other protective measures recommended by the Governor, the Chief Justice of the Supreme Court and the CDC – to wit: limit personal contact as much as possible

**E. Judge Wood's Temporary Suspension of Accepting and Processing GWLs Bears a "real or substantial relation" to efforts to fight COVID-19.**

Plaintiff challenges Judge Wood's decision to temporarily cease issuing GWLs because of the COVID-19 pandemic. As noted above, in <u>Jacobson</u>, the Supreme Court approved certain restrictions on individual rights imposed to protect the public's health during a public health crisis. Recently, in <u>In Re Abbott</u>, No. 20-50264, 2020 WL 1685929, at *6 (5th Cir. Apr. 7, 2020), the Fifth Circuit explained in applying <u>Jacobson</u>, that "individual rights secured by the Constitution do not disappear during a public health crisis," but may be restricted if it can be shown that the restrictions bear a "real or substantial relation" to protecting the public during this public health emergency. <u>Jacobson</u>, 197 U.S. at 28. And while "pretextual," "arbitrary," or "oppressive" measures should be struck down, "courts may not [otherwise] second-guess the wisdom or efficacy of the measures." *In re Abbott*, 2020 WL 1685929, at *7.

Courts have long recognized governments' compelling interest in combating the spread of infectious diseases. *See* <u>Jacobson</u>, 197 U.S. at 27 ("Upon the principle of self-defense, of paramount necessity, a community has the right to protect itself

against an epidemic of disease which threatens the safety of its members."); <u>Simpson v. Shepard</u> *(U.S. Reports Title: Minnesota Rate Cases)*, 230 U.S. 352, 406 (1913) ("The power of the state to take steps to prevent the introduction or spread of disease, although interstate and foreign commerce are involved . . . is beyond question."); *In re Abbott*, 2020 WL 1685929, at *1 (emphasizing "the escalating spread of COVID-19, and the state's critical interest in protecting the public health").

Thus, Judge Wood's decision to temporarily suspend the acceptance and processing of GWL applications, clearly bears a "real or substantial relation" to efforts to fight COVID-19 and is a valid exercise of police powers. <u>Jacobson</u>, 197 U.S. at 28. Accepting and processing GWL licenses requires the Probate Court employee to stand immediately next to the applicant, physically lay hands on the applicant's hands/fingers, guide the applicant's hands/fingers onto a glass plate, and roll each fingertip onto the glass plate. These restrictions on individual rights, especially a temporary suspension of the issuance of GWLs clearly bear a real or substantial relation to efforts to fight COVID-19 in light of the CDC Guidelines and the requirements of the SIP upon which Judge Wood relied in making his decision. Further, as noted above, even individuals without a valid GWL may carry loaded firearms under a number of circumstances (See, O.C.G.A. § 16-11-126(a) - (c)).

## **CONCLUSION**

For all of the reasons set forth above and in the County's Brief in Support of its Motion for Summary Judgment, and in Judge Wood's Brief in Support of his Motion to Dismiss and because Plaintiffs are unable to clearly establish the 'burden of persuasion' as to the four requisites of granting a temporary injunction (see Horton, 272 F. 3d at 1326 (11th Cir. 2001)), Plaintiff's application should be DENIED.

Respectfully submitted, this 24th day of April, 2020.

**JARRARD & DAVIS, LLP**

/s/ *Patrick D. Jaugstetter*
ANGELA E. DAVIS
Georgia Bar No. 240126
adavis@jarrard-davis.com
PATRICK D. JAUGSTETTER
Georgia Bar No. 389680
patrickj@jarrard-davis.com
Attorneys for Defendants Cherokee County
and Judge Keith Wood

222 Webb Street
Cumming, Georgia 30040
(678) 455-7150 (telephone)
(678) 455-7149 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed CHEROKEE COUNTY, GEORGIA'S AND JUDGE KEITH WOOD'S JOINT BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR IN THE ALTERNATIVE, ISSUANCE OF A PRELIMINARY INJUNCTION with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record:

I further certify that the above and foregoing meets the requirements set forth in L.R. 5.1(C) and has been prepared using Times New Roman 14-point font.

This 24th day of April, 2020.

**JARRARD & DAVIS, LLP**


/s/ *Patrick D. Jaugstetter*
ANGELA E. DAVIS
Georgia Bar No. 240126
adavis@jarrard-davis.com
PATRICK D. JAUGSTETTER
Georgia Bar No. 389680
patrickj@jarrard-davis.com
Attorneys for Defendants Cherokee County
and Judge Keith Wood

222 Webb Street
Cumming, Georgia 30040
(678) 455-7150 (telephone)
(678) 455-7149 (facsimile)