IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA WALTERS, an individual;<br>SECOND AMENDMENT<br>FOUNDATION; and<br>FIREARMS POLICY COALITION,<br>INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>BRIAN KEMP, in his official capacity<br>as the Governor of Georgia; GARY<br>VOWELL, in his official capacity as<br>Commissioner of the Department of<br>Public Safety and Colonel of the Georgia<br>State Patrol; THE COUNTY OF<br>CHEROKEE; and KEITH WOOD, in his<br>official capacity as Judge of the Probate<br>Court of Cherokee County,<br><br>    Defendants. | Case No. 1:20-cv-01624-SCJ |

## **AFFIDAVIT OF JUDGE KEITH WOOD**

Judge Keith Wood, who appeared before the undersigned notary public duly authorized to administer oaths in the State of Georgia, and after being sworn, deposes and says as follows:

1.

I am over the age of 21 years, am under no legal disability which would prevent me from giving this affidavit, and give this affidavit of my own personal knowledge of the facts contained herein.

2.

I am named in my official capacity as Judge of the Probate Court of Cherokee County, Georgia in the above-captioned civil action now pending in the United States District Court for the Northern District of Georgia.

3.

I currently serve as Probate Judge of Cherokee County, having served in such capacity since 2009.

4.

As Probate Judge of Cherokee County, I am responsible for the operations of all functions of the Probate Court, including the management and supervision of my staff.

5.

As Probate Judge of Cherokee County, I am not subject to the supervision and control of Cherokee County in the management and operations of the Probate Court.

6.

As Probate Judge of Cherokee County, I am responsible for the acceptance and review of applications for and the issuance of Georgia weapons carry permits ("GWLs") pursuant to O.C.G.A. §16-11-129.

7.

In order to process a new application for a GWL, it is necessary that the applicant be fingerprinted. A "new" application would be one where the applicant has either never had a GWL or has allowed a prior GWL to have lapsed more than 30 days.

8.

The Probate Court of Cherokee County has a "live scan" fingerprinting machine which is located in the file room.

9.

The collection of a GWL applicant's fingerprint is performed by one of my employees in the Probate Court who are trained to perform such act. (I do not have a contract with any law enforcement agencies to collect fingerprints for GWL applications).

10.

In order to most effectively fingerprint someone, the person collecting the fingerprint is required to stand immediately next to the applicant, guide that

person's hands/fingers onto a glass plate, and roll each fingertip onto the glass plate.

11.

This fingerprinting process takes, on average, three minutes per applicant.

12.

Additionally, an applicant for both a new or renewal GWL is required to be photographed and to provide an electronic signature.

13.

A GWL applicants' photograph is likewise taken in the file room of the Probate Court and is performed by one of my employees in the Probate Court who are trained to perform such act.

14.

In order to properly photograph an applicant, the employee sits approximately 3-4 feet from the applicant and takes the photograph using a USB computer camera attached to a desktop computer.

15.

The GWL applicant cannot wear a mask when his/her photograph is taken.

16.

A GWL applicant must then provide a signature on an electronic keypad using a common stylus available to all applicants.

17.

Finally, a GWL applicant must review the information entered into the system to check for typographical errors and sign an acknowledgment that the information is correct.

18.

The photograph/signature/review process takes, on average, five (5) minutes.

19.

The Probate Court facilities are relatively small and there is limited space available for employees and visitors, such as applicants for GWL's and individuals appearing in Probate Court for other purposes.

20.

As Probate Judge of Cherokee County, I am responsible for the acceptance and review of applications for and issuance of marriage licenses pursuant to O.C.G.A. §19-3-30.

21.

In order to obtain a marriage license, it is not necessary for applicants to be fingerprinted or photographed.

22.

In order to obtain a marriage license, an applicant must complete a written application and file the same, along with proper payment, in the Probate Court.

23

This procedure is completed with the applicant separated from the staff member by a thick glass partition and not standing within 3-4 feet of the staff member for any extended period of time.

24.

On March 14, 2020, I became aware that the Governor of the State of Georgia issued a State of Emergency in response to the public health crisis resulting from the COVID-19 pandemic (the "DOE").

25.

A true and correct copy of the DOE as I reviewed it and as appears on the Governors website (https://gov.georgia.gov/executive-action/executive-orders/2020-executive-orders) is attached hereto as Exhibit 1.

26.

On March 14, 2020, I became aware of the Declaration of State of Judicial Emergency as issued by the Chief Justice of the Supreme Court of Georgia (the "JEO"). A true and correct copy of the JEO as published on the website of the Georgia Supreme Court (https://www.gasupreme.us/wp-content/uploads/2020/03/CJ-Melton-amended-Statewide-Jud-Emergency-order.pdf) is attached hereto as Exhibit 2. A true and correct copy of the amended JEO as published on the website of the Georgia Supreme Court (https://www.gasupreme.us/wp-content/uploads/2020/04/CJ_Melton_Extension_Order_signed_entered.pdf) is attached hereto as Exhibit 3.

27.

In the JEO, the Chief Justice of the State of Georgia, directed as follows:

> To the extent feasible, courts should remain open to address essential functions, and in particular courts should give priority to matters necessary to protect health, safety, and liberty of individuals. Essential functions are subject to interpretation; however, some matters that fall into the essential function category are: (1) where an immediate liberty or safety concern is present requiring the attention of the court as soon as the court is available; (2) criminal court search warrants, arrest warrants, initial appearances, and bond reviews; (3) domestic abuse temporary protective orders and restraining orders; (4) juvenile court delinquency detention hearings and emergency removal matters; and (5) mental health commitment hearings.

28.

Acceptance and processing of GWLs was not identified as an "essential function" in the JEO.

29.

On March 16, 2020, I received from the Judicial Qualifications Commission (the "JQC") a statement informing me that any judge who failed to follow the JEO could be subject disciplinary action before the JQC. A true and correct copy of the statement from the JQC as I received it, and as appears on the JQC's website (https://img1.wsimg.com/blobby/go/d72953e9-9d0a-4693-87a4-cedcc5933b8d/downloads/JQC%20Statement%20on%20Statewide%20Judicial%20Emergency.pdf?ver=1587062736798)is attached hereto as Exhibit 4.

30.

On or about March 17, 2020, I received a memorandum (the "CPJ Memorandum") from the Executive Committee of the Council of Probate Judges of Georgia (the "Council"). A true and correct copy of the CPJ Memorandum, as I received it, is attached hereto as Exhibit 5.

31.

Pursuant to the CPJ Memorandum, the Council expressed its position that weapons carry licenses are not essential services under the JEO.

32.

I further reviewed the COVID-19 Interim Guidelines for Businesses and Employers issued by the Centers for Disease Control (the "CDC Guidelines") (a true and correct copy of the CDC Guidelines as I reviewed them and as appear available on the CDC's website (https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html) are attached as Exhibit 6.

33.

On or about March 14, 2020, and in reliance upon my review of the guidance provided to me by the JEO, as amended, the JQC Statement, the CPJ Memorandum and the CDC Guidelines, I determined that I could not allow the continued acceptance and processing of applications for GWL's while adequately protecting the health and safety of my employees and visitors to the Probate Court.

34.

My specific concerns regarding the protection of the health and safety of my employees and visitors to the Probate Court were based upon the following:

- limited space available in the Court which would not allow for proper social distancing;
- a lack of funds or resources to construct screens or other physical barriers which would serve to reduce the risk of spreading the coronavirus;

- the fact that personal protective equipment, i.e.: masks, gloves, etc., are only available in limited supply for Probate Court employees; and
- the inability to collect fingerprints and take photographs within the recommended social distancing between applicants and Probate Court staff.

35.

Accordingly, on March 14, 2020, I temporarily suspended the acceptance of GWL applications.

36.

On April 2, 2020, I became aware of the Governor's Executive Order imposing a mandatory shelter-in-place and establishing guidelines for "critical infrastructure" within the State of Georgia (the "SIP"). A true and correct copy of the SIP as I reviewed it and as appears on the Governor's website is attached hereto as Exhibit 7.

37.

Upon receipt and review of the Governors Executive Order, it became apparent to me that I could not achieve the guidelines for critical infrastructure employers as set forth in the SIP while accepting application s for GWLs given the size and layout of the Probate Court, the resources available to me and the procedure required to accept applications for GWLs.

38.

Accordingly, in order to protect the health and safety of my employees and visitors to the Probate Court, and in reliance upon the DEO, the JEO, as amended, the JQC Statement, the CPJ Memorandum, the CDC Guidelines and the SIP, and after April 2, 2020, I made the decision to continue to suspend the acceptance of applications for GWLs until I can ensure the such permit could be accepted and processed in full compliance with the guidelines and instructions set forth in the DEO, the JEO, as amended, the JQC statement, the CDC Guidelines and the SIP.

39.

I declare, under penalty of perjury that the facts contained in this affidavit are true and correct to the best of my knowledge.

Executed in Cherokee County, Georgia, this 24th day of April, 2020.

_____
Judge Keith Wood

Sworn to and subscribed
before me this 24 day of
April, 2020

_____
Notary Public
Commission Expires: Jan. 10, 2021

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed AFFIDAVIT OF JUDGE KEITH WOOD with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record:

I further certify that the above and foregoing meets the requirements set forth in L.R. 5.1(C) and has been prepared using Times New Roman 14-point font.

This 24th day of April, 2020.

                                            **JARRARD & DAVIS, LLP**

                                            /s/ *Patrick D. Jaugstetter*
                                            ANGELA E. DAVIS
                                            Georgia Bar No. 240126
                                            adavis@jarrard-davis.com
                                            PATRICK D. JAUGSTETTER
                                            Georgia Bar No. 389680
                                            patrickj@jarrard-davis.com
                                            Attorneys for Defendant Keith Wood

222 Webb Street
Cumming, Georgia 30040
(678) 455-7150 (telephone)
(678) 455-7149 (facsimile)