# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| LISA WALTERS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| v. | ) | _____ |
| | ) | |
| BRIAN KEMP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF GEORGE A. MOCSARY

I, George A. Mocsary, declare as follows:

1. I am not a party to the above-captioned action, I am over the age of 18, I have personal knowledge of the facts stated herein, and I am competent to testify as to the matters stated and the opinions rendered below.

2. I graduated from the Cooper Union School of Engineering with a bachelor's degree in engineering in 1995. I earned a master's degree in business administration from the University of Rochester in 1997. I received my Juris Doctor degree from Fordham Law School, where I graduated first in my class and summa cum laude. I served as Notes and Articles Editor of the Fordham Law Review and was the recipient of the Fordham Law Alumni Association Medal in Constitutional Law.

3. I am a Professor of Law at the University of Wyoming College of Law. I previously taught at the Southern Illinois University School of Law as an Associate Professor, and at the University of Connecticut School of Law as a Visiting Assistant Professor.

4. Prior to entering academia, I practiced corporate and bankruptcy law at Cravath, Swaine and Moore in New York. Before that, I clerked for the Honorable Harris L. Hartz of the U.S. Court of Appeals for the Tenth Circuit.

5. I co-authored the first law school textbook on the Second Amendment, entitled FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY (2nd ed. 2017) (with Nicholas J. Johnson, David B. Kopel, and Michael P. O'Shea).

6. I have also published several scholarly research articles on the right to keep and bear arms, which have been published in the Connecticut Law Review, Duke Law Journal Online, Fordham Law Review, George Mason Law Review, and other journals.

7. My scholarship has been cited by the Supreme Court of the United States in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court of Illinois, and in several opinions by the U.S. Courts of Appeals.

8. I taught a course on the Second Amendment at Southern Illinois University, and will likely teach it again at the University of Wyoming College of Law.

9. Attached hereto as **Exhibit 1** is a true and correct copy of my Curriculum Vitae. It describes my education, employment background, career experience, and publications.

10. My opinions expressed here are formed in light of my scholarship and study of the current legal landscape of the Second Amendment.

11. In the colonial era, laws involving the carrying of weapons often *required* that arms be carried. *See, e.g.*, WILLIAM WALLER HENING, 1 THE STATUTES AT LARGE: BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE 226 (1808) (Virginia's 1639 law requiring "ALL persons except negroes to be provided with arms and ammunition or be fined at pleasure of the Governor and Council"); *id.* at 263 (Virginia's 1643 law providing that "masters of every family shall bring with them to church on Sundays one fixed and serviceable gun with sufficient powder and shott"); 2 *id.* at 333 (Virginia's 1676 law requiring "that in goeing to churches and courts in [] tymes of danger, all people be enjoyned and required to goe armed for their greate security").

12. Some colonial laws prohibited the carrying of firearms in an aggressive and terrifying manner. These laws were passed by Massachusetts-Bay in 1692, ACTS AND LAWS PASSED BY THE GREAT AND GENERAL COURT OF ASSEMBLY OF THEIR MAJESTIES PROVINCE OF THE MASSACHUSETTS-BAY 18 (1692)

3

(forbidding going about "Armed offensively before any of Their Majesties Justices, or other Their Officers or Ministers doing their Office, or elsewhere, By Night or by Day, in Fear or Affray of Their Majesties Liege People"); Virginia in 1736, George Webb, THE OFFICE OF AUTHORITY OF A JUSTICE OF PEACE 92–93 (1736) (a constable "may take away Arms from such who ride, or go, offensively armed, in Terror of the People'' and may bring the person and the arms before a Justice of the Peace); and New Hampshire in 1759, ACTS AND LAWS OF HIS MAJESTY'S PROVINCE OF NEW-HAMPSHIRE IN NEW-ENGLAND 1–2 (1759) (forbidding going about "armed offensively").

13. Some similar statutes were passed in the post-Revolutionary era. For example, Virginia passed a similar law in 1786, A COLLECTION OF ALL SUCH ACTS OF THE GENERAL ASSEMBLY OF VIRGINIA, OF A PUBLIC AND PERMANENT NATURE 30 (1803) (forbidding going about "armed by night or by day, in fairs or markets, or in other places, in terror of the Country"); Massachusetts passed one in 1795, 2 LAWS OF THE COMMONWEALTH OF MASSACHUSETTS, FROM NOVEMBER 28, 1780 TO FEBRUARY 28, 1807, at 652–53 (1807) (forbidding going about "armed offensively, to the fear or terrour of the good citizens of this Commonwealth") (enacted Jan. 27, 1795); and Tennessee passed one in 1801, R.L. Caruthers & A.O.P. Nicholson, A COMPILATION OF THE STATUTES OF TENNESSEE OF A GENERAL AND PERMANENT NATURE 99–100 (1806)

(forbidding going about "armed to the terror of the people, or privately carry any dirk, large knife, pistol, or any other dangerous weapon, to the fear or terror of any person"). As Sheridan's popular 1789 dictionary shows, "offensively" meant "so as to cause uneasiness of displeasure; by way of attack, not defensively." THOMAS SHERIDAN, A GENERAL DICTIONARY OF THE ENGLISH LANGUAGE (Phila., Young 1789). These laws did not prohibit the open or concealed carrying of arms, but merely prohibited them from being carried in a way that terrorized the public.[1]

14. In the nineteenth century, some states restricted concealed carry, while leaving open carry unregulated. *See, e.g.*, 1819 Ind. Acts 39; 1838 Va. Acts ch. 101; 1852 N.M. Laws 67; 1859 Ohio Laws 56; 1881 Del. Laws 716.

---

[1] These laws were modeled on England's 1328 Statute of Northampton, which provided:

> Item, it is enacted, that no man great nor small, of what condition soever he be, except the king's servants in his presence, and his ministers in executing of the king's precepts, or of their office, and such as be in their company assisting them, and also [upon a cry made for arms to keep the peace, and the same in such places where such acts happen,] be so hardy to come before the King's justices, or other of the King's ministers doing their office, with force and arms, nor bring no force in affray of the peace, nor to go nor ride armed by night nor by day, in fairs, markets, nor in the presence of the justices or other ministers, nor in no part elsewhere, upon pain to forfeit their armour to the King, and their bodies to prison at the King's pleasure.

2 Edw. 3, c. 3 (1328). The Statute of Northampton refers only to going about armed, without requiring that it be done in an an aggressive manner. English courts nevertheless understood the law to have such a requirement, although the matter is debated. JOHNSON ET AL., FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY 91–97 (2nd ed. 2017) (citing sources). The point is irrelevant, however, because the colonial and founding-era statutes explicitly applied only to going about in a terrifying manner.

15. The constitutionally required legality of either open or concealed carry was the common understanding through the nineteenth century. Laws entirely prohibiting handgun carriage were widely ruled unconstitutional when challenged. Most notably, the cases that the Supreme Court cited approvingly in *District of Columbia v. Heller*, 554 U.S. 570 (2008) determined that a ban on both open and concealed carry is unconstitutional. *See* Joseph G.S. Greenlee, *Concealed Carry and the Right to Bear Arms*, 20 FEDERALIST SOC'Y REV. 32, 34–35 (2019) (discussing *Bliss v. Com.*, 12 Ky. 90 (1822); *State v. Chandler*, 5 La. Ann. 489, 490 (1850); *State v. Reid*, 1 Ala. 612 (1840); *Nunn v. State*, 1 Ga. 243 (1846)). In *Nunn*, the Georgia Supreme Court struck a ban on open carrying handguns, explaining that, "The right of the whole people, old and young, men, women and boys, and not militia only, to keep and bear *arms* of every description … shall not be *infringed*, curtailed, or broken in upon, in the smallest degree … any law [that does so], State or Federal, is repugnant to the Constitution, and void…" *Id.* at 251.

16. Nineteenth century laws that required permission to carry firearms were typically discriminatory, applying to slaves and freedmen. For example, Maryland forbade "any free negro or mulatto to go at large with any gun," without "a certificate from a justice of the peace," to certify that he is an orderly and peaceable person." Chap. 86, § II (1806), *in* 3 LAWS OF

MARYLAND 298 (1811). A Mississippi law provided that "no freedman, free negro or mulatto, not in the military service of the United States government, and not licensed so to do by the board of police of his or her county, shall keep or carry fire-arms of any kind." Certain Offenses of Freedmen, 1865 Miss. Laws p. 165, § 1. *See* also, *e.g.*, 1827 Del. Laws 125, 1828 Fla. Laws 174; 1841 N.C. Laws 61. The Supreme Court of Ohio noted that these discriminatory laws provide little precedential value. *State v. Nieto*, 101 Ohio St. 409, 430, 130 N.E. 663, 669 (1920) (noting that these laws reflected "a decisive purpose to entirely disarm the negro").

17. Statutes intended to apply to all law-abiding citizens that required a permit to carry a concealed weapon spread only in the twentieth century. *See, e.g.*, 1913 Laws of N.Y., ch. 608, at 1627–30; 1924 N.J. Laws 305; 1923 Cal. Stat. 697; 1925 Or. Laws 469. Georgia passed its law requiring a permit to carry "any pistol or revolver without first taking out a license" in 1914. 6 PARK'S ANNOTATED CODE OF THE STATE OF GEORGIA 234 (1914).

18. There is no longstanding tradition of completely prohibiting arms carrying in American history.

## CONCLUSIONS

19. My research leads me to the following conclusions:

20. Throughout the colonial and founding eras, law-abiding citizens could carry

firearms in public in any manner—i.e., openly or concealed—without first acquiring government permission. Individuals in the colonial and founding eras had the right and ability to carry arms publicly for lawful purposes, in whatever manner they desired, as long as they were not doing so offensively or terrorizing the public.

21. Throughout the nineteenth century, some states restricted the manner in which arms could be carried. Usually, if carry was restricted at all, concealed carry was regulated and open carry was unregulated. But only slaves or freedmen were regularly prohibited from carrying arms, under discriminatory laws.

22. Laws prohibiting all manner of carry were deemed unconstitutional in the decisions cited approvingly in *District of Columbia v. Heller*, 554 U.S. 570 (2008). In one of these cases, *Nunn v. State*, the Georgia Supreme Court struck down a ban on the open carry of handguns.

23. Laws that prohibit all manner of carry unless one obtains a state-issued permit are generally of twentieth-century vintage.

24. Georgia's permitting scheme has no founding-era analog and is not longstanding, especially if its application entirely prohibits public handgun carriage.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on April 16, 2020.

_____
George A. Mocsary

Case 1:20-cv-01624-SCJ   Document 30-16   Filed 04/26/20   Page 10 of 17

Plaintiffs' Exhibit 16

# EXHIBIT "1"

Plaintiffs' Exhibit 16

# George A. Mocsary

University of Wyoming College of Law
1000 E. University Avenue | Laramie, WY 82071
(307) 766-5262 | gmocsary@uwyo.edu

## ACADEMIC EXPERIENCE

**UNIVERSITY OF WYOMING COLLEGE OF LAW** — Laramie, WY
*Professor of Law* — 7/18 – PRESENT
*Director*, Business Law Practicum.

Courses:
- Corporations
- Agency and Partnership
- Business Law Practicum
- Contracts II

**SOUTHERN ILLINOIS UNIVERSITY SCHOOL OF LAW** — Carbondale, IL
*Associate Professor* — 7/18 – 5/19
*Assistant Professor* — 7/13 – 6/18
*Director*, Faculty Development.
*Director*, Business Boot Camp.
*Director*, Law and Economics Program.
*Director*, Gene and Katy Simonds Lectureship in Democracy.
- Recipient of the SIU Law Outstanding Scholar Award (April 13, 2017).

Courses:
- Business Organizations
- Corporations
- Agency and Partnership
- Contracts I and II
- Accounting for Lawyers
- Business Boot Camp
- Judicial Externship
- Firearms Law and the Second Amendment

**UNIVERSITY OF CONNECTICUT SCHOOL OF LAW** — Hartford, CT
*Visiting Assistant Professor* — 8/11 – 7/13
Courses: Business Organizations, Legal Accounting.

## TEACHING & RESEARCH INTERESTS

### TEACHING INTERESTS

- Business Organizations
- Corporations
- Unincorporated Business Entities
- Securities Regulation
- Contracts
- Corporate Finance
- International Business Transactions
- Insurance Law
- Accounting for Lawyers
- Commercial Law
- Law and Economics
- Firearms Law

### RESEARCH INTERESTS

- Corporate governance and corporate purpose.
- Economic analysis of law.
- Organizational theory.
- The intersection of financial regulation and financial-economic agency theory.
- Firearms law (with a focus on its intersection with business law and the economic analysis of law).

## PUBLICATIONS

### LAW JOURNAL ARTICLES

- *A Close Reading of an Excellent Distant Reading of* Heller *in the Courts*, 68 DUKE L.J. ONLINE 41 (2018).  (link)

- *Insuring the Unthinkable*, NEW APPLEMAN ON INS.: CURRENT CRITICAL ISSUES IN INS. L. 1 (Spring 2018) (lead article).

- *Freedom of Corporate Purpose*, 2016 BYU L. REV. 1319 (2017) (lead article).  (link)

- *Guns, Bird Feathers, and Overcriminalization: Why Courts Should Take the Second Amendment Seriously*, 14 GEO. J. L. & PUB. POL'Y 17 (2016) (with Robert J. Cottrol).  (link)
  - Cited in *Kolbe v. Hogan*, 849 F.3d 114, 154 (4th Cir. 2017) (Traxler, J., dissenting).

- *Insuring Against Guns?*, 46 CONN. L. REV. 1209 (2014) (lead symposium article).  (link)

- *The Embedded Firm: Corporate Governance, Labor, and Finance Capitalism—Commentary*, 3 ACCT., ECON. & L. 123 (2014) (peer reviewed essay on incentive issues in corporate governance as they relate to corporate purpose, based on participation in a symposium discussion panel on THE EMBEDDED FIRM: CORPORATE GOVERNANCE, LABOR, AND FINANCE CAPITALISM (Cynthia A. Williams & Peer Zumbansen eds., 2011)).  (link)

- *Statistically Insignificant Deaths: Disclosing Drug Harms to Investors (and Patients) Under SEC Rule 10b-5*, 82 GEO. WASH. L. REV. 111 (2013).  (link)

- *"This Right Is Not Allowed by Governments That Are Afraid of the People": The Public Meaning of the Second Amendment When the Fourteenth Amendment Was Ratified*, 17 GEO. MASON L. REV. 823 (2010) (with Clayton E. Cramer & Nicholas J. Johnson) (link).
  - Cited in *McDonald v. Chicago*, 561 U.S. 742, 773 n.21, 776 n.25, 780 (2010).
  - Cited in *Ezell v. City of Chicago*, 651 F.3d 684, 702 n.11 (7th Cir. 2011).

- Note, *Explaining Away the Obvious: The Infeasibility of Characterizing the Second Amendment as a Nonindividual Right*, 76 FORDHAM L. REV. 2113 (2008).  (link)

### BOOKS AND SUPPLEMENTS

- FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY (2d ed. 2017) (with Nicholas J. Johnson, David B. Kopel & Michael P. O'Shea).
  - Cited in Illinois v. Chairez, 2018 IL 121417, at 7 n.3 (Ill. Feb. 1, 2018).

- 2015 SUPPLEMENT FOR FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY (2015) (with Nicholas J. Johnson, David B. Kopel & Michael P. O'Shea).

- FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY online chs. 12-15 (2014) (with Nicholas J. Johnson, David B. Kopel & Michael P. O'Shea).  (link)

- FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY (2012) (with Nicholas J. Johnson, David B. Kopel & Michael P. O'Shea) (first casebook on firearms law).
  - Cited in *Drake v. Filko*, 724 F.3d 426, 441 n.3, 441 n.5, 442 (3d Cir. 2013) (Hardiman, J., dissenting).
  - Cited in *Heller v. District of Columbia*, 670 F.3d 1244, 1287 (D.C. Cir. 2011) (Kavanaugh, J., dissenting).

**OTHER ARTICLES**

- *States have a constitutional duty to recognize gun rights nationwide*, THE HILL (Dec. 27, 2017), http://thehill.com/opinion/international/366599-states-have-a-constitutional-duty-to-recognize-gun-rights-nationwide (with Rafael Mangual).

- *Defying the Supreme Court in* Kolbe v. Hogan, LIBR. L. & LIBERTY (Dec. 20, 2017), http://www.libertylawsite.org/2017/12/20/defying-the-supreme-court-in-kolbe-v-hogan/.

- *Are There Guns in Mayberry?*, LIBR. L. & LIBERTY (Oct. 17, 2016), http://www.libertylawsite.org/book-review/are-there-guns-in-mayberry/ (reviewing JENNIFER CARLSON, CITIZEN-PROTECTORS: THE EVERYDAY POLITICS OF GUNS IN AN AGE OF DECLINE (2015)).

- *Incentive Engineering*, LIBR. L. & LIBERTY (July 27, 2015), http://www.libertylawsite.org/book-review/incentive-engineering (reviewing ROBERT D. COOTER & ARIAL PORAT, GETTING INCENTIVES RIGHT: IMPROVING TORTS, CONTRACTS, AND RESTITUTION (2014)).

- *Shareholder Wealth Maximization: A Response to Cynthia Williams*, LIBR. L. & LIBERTY (Feb. 20, 2014), http://www.libertylawsite.org/liberty-forum/shareholder-wealth-maximization-a-response-to-cynthia-williams.

- *Why the Corporation Is Not Merely a Nexus of Contracts: A Response to Alexei Marcoux,* LIBR. L. & LIBERTY (Dec. 20, 2013), http://www.libertylawsite.org/liberty-forum/why-the-corporation-is-not-merely-a-nexus-of-contracts.

- *The Future of Shareholder Wealth Maximization*, LIBR. L. & LIBERTY (Dec. 2, 2013), http://www.libertylawsite.org/liberty-forum/the-future-of-shareholder-wealth-maximization.

- *Monopoly of Violence,* CLAREMONT REV. OF BOOKS, Summer 2010, at 46 (reviewing ROBERT H. CHURCHILL, TO SHAKE THEIR GUNS IN THE TYRANT'S FACE (2008)). (link)

**PRESENTATIONS AND WORKSHOPS**

- *Guns and Moral Panic: Sound Bite Overcriminalization and Judicial Underenforcement of the Second Amendment in New York, New Jersey, and Connecticut*, Address to the Federalist Society's New York City Young Lawyers Chapter (Nov 7, 2019).

- Debater at the University of Utah S.J. Quinney College of Law's 36th Annual Jefferson B. Fordham Debate: *Be it resolved that the Second Amendment right to keep and bear arms should be limited to the home.* (Sept. 5, 2019).

- Commenter at the Duke University School of Law, Center for Firearms Law's Firearms Law Works-in-Progress Workshop (Aug. 2, 2019).

- Discussant at the Southeastern Association of Law Schools 2019 Annual Meeting Discussion Group: Insider Trading Stories (Aug. 1, 2019).

- Reviewer at the Southeastern Association of Law Schools 2019 Annual Meeting Prospective Law Teachers CV Review Session (Jul. 30, 2019).

- *Perceiving and Measuring Judicial Defiance of* Heller, CLE Presentation at the 22nd Annual National Firearms Law Seminar (Apr. 26, 2019).

- Discussant at the Duke University School of Law, Center for Firearms Law and Center for Law, Ethics, and National Security's, The Second Amendment and the Prevention of Tyranny Panel (Feb. 28, 2019).

- Guest Speaker at the Duke University School of Law, Second Amendment: History, Theory, and Practice Class (Feb. 28, 2019).

- Participant Revisiting Corporate Social Responsibility Colloquium presented by the Federalist Society and the Liberty Fund (Jan. 25-26, 2019).

- Presentation at the Hastings Constitutional Law Quarterly and Giffords Law Center Symposium: *Heller* at 10, A "Second-Class Right"? The Second Amendment & Other Constitutional Rights Panel (Jan. 18, 2019).

- Presentation at the AALS 2019 Annual Meeting, Open-Source Panel: Judicial Supremacy (Jan. 5, 2019).

- *Administrative Browbeating*, Presentation at the Federalist Society 2019 Faculty Conference (Jan. 4, 2019).

- Instructor, Udmurt Law Student Project (Oct. 23, 2018) (presented an overview of U.S. contract law via videoconference to Russian law students at Udmurt State University in Izhevsk, Russia).

- Discussant at the Southeastern Association of Law Schools 2018 Annual Meeting Discussion Group: The Role of Corporate Personhood in *Masterpiece Cakeshop* (Aug. 11, 2018).

- Discussant at the Southeastern Association of Law Schools 2018 Annual Meeting Discussion Group: *United States v. Martoma* and the Future of Insider Trading Law (Aug. 9, 2017).

- Commenter at the Southeastern Association of Law Schools 2018 Annual Meeting Prospective Law Teachers Mock Interview Workshop (Aug. 7, 2018).

- *Insider Trading, Demonization of the Financial Sector, and Judicial Complacency*, Presentation at the 2018 National Business Law Scholars Conference (June 21, 2018).

- Presentation at the Campbell Law Review Symposium: *Heller* After Ten Years, *Heller* and Public Carry Restrictions Panel (Feb. 2, 2018).

- *Insider Trading, Demonization of the Financial Sector, and Judicial Complacency*, Presentation at the Federalist Society 2018 Faculty Conference (Jan. 4, 2018).

- Moderator at the Federalist Society 2018 Faculty Conference, Works in Progress Panel (Jan. 5, 2018).

- *Freedom of Corporate Purpose*, Presentation at Mercer University School of Law (Nov. 9, 2017) (invited to participate in speaker series).

- *Insider Trading, Demonization of the Financial Sector, and Judicial Complacency*, Presentation at the Central States Law Schools Association 2017 Annual Meeting (Oct. 7, 2017).

- *Guns, Bird Feathers, and Overcriminalization: Why Courts Should Take the Second Amendment Seriously*, Constitution Day Address at John A. Logan College (Sept. 18, 2017).

- Reviewer at the Southeastern Association of Law Schools 2017 Annual Meeting Prospective Law Teachers CV Review Session (Aug. 2, 2017).

- Discussant at the Southeastern Association of Law Schools 2017 Annual Meeting Discussion Group: Three Felonies a Day?: Is There a Problem of White-Collar Overcriminalization? (Aug. 1, 2017).

- *Guns, Bird Feathers, and Overcriminalization: Why Courts Should take the Second Amendment Seriously*, Keynote Address at the Federalist Society's Lawyer Division's Chicago Chapter's Fourth Annual Otis McDonald Memorial Second Amendment Lecture (May 6, 2017).

- Moderator at the Federalist Society 2017 Faculty Conference, Works in Progress Panel (Jan. 5, 2017).

- Commentator at the George Mason University School of Law, Law and Economics Center's Research Roundtable on Solving the Public Pension Crisis (Sept. 29-30, 2016) (invited to review and comment on nine scholarly papers accepted for publication).

- *Freedom of Corporate Purpose*, Presentation at the Southeastern Association of Law Schools 2016 Annual Meeting (Aug. 6, 2016).

- Commenter at the Southeastern Association of Law Schools 2016 Annual Meeting Prospective Law Teachers Mock Job Talk Workshop (Aug. 5, 2016).

- Commenter at the Southeastern Association of Law Schools 2016 Annual Meeting Prospective Law Teachers Mock Interview Workshop (Aug. 4, 2016).

- *Freedom of Corporate Purpose*, Presentation at the University of Iowa College of Law Faculty Workshop (Feb. 4, 2016).

- Workshop Participant at the George Mason University School of Law, Law and Economics Center's Workshop on the Contractual Theory of the Corporation (Jan. 20-22, 2016).

- Workshop Participant at the George Mason University School of Law, Law and Economics Center's Workshop for Law Professors on the Economics of the Rule of Law (Dec. 11-14, 2015).

- *Freedom of Corporate Purpose*, Presentation at the University of Chicago Law School Legal Scholarship Workshop (Nov. 23, 2015).

- Author Participant and Organizer at the Theory of the Firm Colloquium presented by the Federalist Society and the John Templeton Foundation (Nov. 6-7, 2015) (featured readings included George A. Mocsary, *Freedom of Corporate Purpose*, 2016 BYU L. REV. 1319 (2017) and George A. Mocsary, *Why the Corporation Is Not Merely a Nexus of Contracts: A Response to Alexei Marcoux,* LIBR. L. & LIBERTY (Dec. 20, 2013), http://www.libertylawsite.org/liberty-forum/why-the-corporation-is-not-merely-a-nexus-of-contracts).

- Workshop Participant at the George Mason University School of Law, Law and Economics Center's Workshop for Law Professors on the Economics of Public Pension Reform (Sept 17-20, 2015).

- Workshop Participant at the George Mason University School of Law, Law and Economics Center's Workshop for Law Professors on Austrian Law and Economics (Oct. 2-3, 2014).

- Guest Presenter and Workshop Participant at the George Mason University School of Law, Law and Economics Center's Economics Institute for Law Professors (June 15-26, 2014) (taught a segment on game theory in corporate law).

- Workshop Participant at the George Mason University School of Law, Law and Economics Center's Workshop for Law Professors on Risk, Injury, Liability, and Insurance (Jan. 30 - Feb. 1, 2014).

Case 1:20-cv-01624-SCJ   Document 30-16   Filed 04/26/20   Page 16 of 17

Plaintiffs' Exhibit 16

- Presentation at the AALS 2014 Annual Meeting, Criminal Justice Panel: The Problematics of Possessory Offenses (Jan. 5, 2014) (discussing the potential for liability insurance mandates to lead to status criminality).

- *Insuring Against Guns?*, Presentation at the University of Chicago Law School Legal Scholarship Workshop (Nov. 25, 2015).

- *Insuring Against Guns?*, Presentation at the Connecticut Law Review Symposium: Up in Arms: The Second Amendment in the Modern Republic, Tragedy and Gun Control: The Legislative Response Panel (Nov. 15, 2013).

- Moderator at the Connecticut Law Review Symposium: Up in Arms: The Second Amendment in the Modern Republic, Litigating the Affirmed Right to Arms Panel (Nov. 15, 2013).

- *The Second Amendment as Tyranny Control*, Presentation at the Indiana Tech Law School Symposium: On the Question of Regulating Guns (Nov. 8, 2013).

- *Insuring Against Guns?*, Presentation at the Indiana Tech Law School Faculty Workshop (Nov. 7, 2013).

- Discussant at the Society for the Advancement of Socio-Economics 2012 Annual Meeting, Authors meet Critics Panel (June 29, 2012) (discussing THE EMBEDDED FIRM: CORPORATE GOVERNANCE, LABOR, AND FINANCE CAPITALISM (Cynthia A. Williams & Peer Zumbansen eds., 2011)).

# EDUCATION

**FORDHAM UNIVERSITY SCHOOL OF LAW**  New York, NY
Juris Doctor, *Summa Cum Laude*.  MAY 2009
G.P.A.: 3.9 (First in a class of 468).
- Notes & Articles Editor, Fordham Law Review.

**UNIVERSITY OF ROCHESTER, SIMON GRADUATE SCHOOL OF BUSINESS**  Rochester, NY
Master of Business Administration, Competitive and Organizational Strategy.  MARCH 1997
- Specialized in the application of financial-economic agency theory to business situations.
- Dean's list; 70% merit scholarship; selected to mentor first-year students.

**THE COOPER UNION SCHOOL OF ENGINEERING**  New York, NY
Bachelor of Engineering, Civil Engineering.  MAY 1995
- Dean's list; Full scholarship.

# LEGAL EXPERIENCE

**CRAVATH, SWAINE & MOORE**  New York, NY
**Associate**, Bankruptcy & Restructuring  12/10 – 8/11
**Summer Associate**, Bankruptcy & Restructuring and Litigation  SUMMER 2008
- Represented a major derivatives creditor in Lehman Brothers' bankruptcy and handled other bankruptcy matters.
- Worked on restructuring transactions involving major American corporations.
- Assisted other Corporate Department groups with bankruptcy and restructuring matters.

**HON. HARRIS L. HARTZ, U.S. COURT OF APPEALS FOR THE TENTH CIRCUIT**  Albuquerque, NM
*Law Clerk*  8/09 – 7/10

**HON. JOSE L. LINARES, U.S. DISTRICT COURT, DISTRICT OF NEW JERSEY**  Newark, NJ
*Judicial Intern*  SUMMER 2007

**HON. NOVALYN L. WINFIELD, U.S. BANKRUPTCY COURT, DISTRICT OF NEW JERSEY**  Newark, NJ
*Judicial Intern*  SUMMER 2007

## BUSINESS EXPERIENCE

**GRENFELL CONSULTING**  New York, NY
*Owner/Management Consultant*  9/01 – 2/07
Clients included:

**Pictet & Cie.,** e-Business Group  **Geneva, Switzerland**
Pictet & Cie. is one of the oldest private banks in Switzerland.
- Created a strategy for the wireless delivery of financial information that adhered to Swiss banking-secrecy laws.

**Blister, LLC**  **New York, NY**
- Advised creative advertising business in its startup phase, helping to grow its revenues from $36,000 in its first year to over $800,000 in its second.

**Office of the Mayor, City of New York**  **New York, NY**
- Oversaw projects for a $9 billion capital program.
- Taught training classes to City employees and vendors on the City's financial systems and business processes.

**JPMorgan Chase & Co.**  **New York, NY**
- Analyzed the businesses of banks acquired via merger to identify synergies and areas for system integration.

**CLICKTHINGS**  New York, NY
*Manager, Professional Services*  5/00 – 1/01
ClickThings developed information-distribution technology for the business-services market.
- Created plans for entering new markets via reseller partnerships by analyzing clients' and competitors' strategies.

**AMERICAN MANAGEMENT SYSTEMS**  New York, NY
*Senior Business Analyst*  6/97 – 5/00
- Led a team of consultants in creating a business model that integrated budgeting, procurement, and accounting activities, enabling the City of New York to match forecasts with expenditures for the first time in its history.

**CREDIT SUISSE FIRST BOSTON**  New York, NY
*Change Management Coordinator*, Fixed Income Division  9/94 – 1/97
(Worked half-time while classes were in session, full-time during winter, spring, and summer recesses.)

## OTHER

**BAR ADMISSIONS:**  New York, U.S. Court of Appeals for the Tenth Circuit.

**COMMUNITY SERVICE:** Provided **Carbondale New School** with *pro bono* advisory work on contract-related matters; presented two *pro bono* **seminars on end-of-life matters** open to and attended by members of the public.

**LANGUAGES:**  Fluent in conversational **Hungarian**, basic understanding of **French**.