**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LISA WALTERS, an individual; | ) | |
| SECOND AMENDMENT | ) | |
| FOUNDATION; and | ) | |
| FIREARMS POLICY COALITION, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01624-SCJ |
| | ) | |
| BRIAN KEMP, in his official capacity | ) | |
| as the Governor of Georgia; GARY | ) | |
| VOWELL, in his official capacity as | ) | |
| Commissioner of the Department of | ) | |
| Public Safety and Colonel of the Georgia | ) | |
| State Patrol; THE COUNTY OF | ) | |
| CHEROKEE; and KEITH WOOD, in his | ) | |
| official capacity as Judge of the Probate | ) | |
| Court of Cherokee County, | ) | |
| | ) | |
| Defendants. | ) | |

**CHEROKEE COUNTY, GEORGIA'S AND JUDGE KEITH WOOD'S**
**JOINT POST HEARING BRIEF IN OPPOSITION TO PLAINTIFFS'**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR IN**
**THE ALTERNATIVE, ISSUANCE OF A PRELIMINARY INJUNCTION**
**AND IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS**

Come now, CHEROKEE COUNTY, GEORGIA (the "County") and JUDGE

KEITH WOOD ("Judge Wood") and file this, their Joint Post-Hearing Brief in

Opposition to Plaintiffs' Application for Preliminary Injunction and in further support of their respective Motions to Dismiss, showing the Court as follows:

## I. <u>INTRODUCTION</u>

At the conclusion of the April 27, 2020 hearing (the "Hearing") before the Court on Plaintiffs' Application for Preliminary Injunction, (the "Application") the Court invited the parties to submit Post-Hearing Briefs.  This Joint Post-Hearing Brief is filed on behalf of the County and Judge Wood in response to such invitation.

During the Hearing, a number of issues were raised, or questions posed by the Court, which are addressed below.  In addition to the arguments asserted herein, the County and Judge Wood rely upon the arguments asserted in connection with their respective Motions to Dismiss (Doc. No. 27 and Doc. No. 29) and their Joint Motion in Opposition to the Application (Doc. No. 28).

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A. Plaintiffs Lack Standing

### 1.  Standing is a threshold issue of subject matter jurisdiction.

As the Eleventh Circuit reiterated in a case handed down just today, federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute. Jacobson v. Florida Secretary of State, Jacobson v. Florida Secretary of State, No. 19-14552 at *9 (11th Cir., April 29, 2020). Indeed, "[f]or a court to pronounce upon . . . the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." Id. at *9 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101–02 (1998)). Importantly, when a "federal court discovers a lack of jurisdiction, **it must dismiss the action**." Id.  See also MSP Recovery, LLC v. Allstate Ins. Co., 835 F.3d 1351, 1357 (11th Cir. 2016) (emphasis added).

In order to invoke the subject matter jurisdiction of federal courts, a litigant must be able to demonstrate a "case" or "controversy" under U.S. Const. art. III, § 2. To have a case or controversy, a litigant must establish that he has standing, which requires proof of three elements. United States v. Amodeo, 916 F.3d 967, 971 (11th Cir. 2019). Here, Plaintiffs must prove (1) an injury in fact that, (2) is fairly traceable

to the challenged action of the Defendants, and (3) is likely to result in a favorable decision.[1] <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560–61 (1992).

### 2. Plaintiffs Have Suffered No Concrete Injury-in-Fact Sufficient to Establish Standing

It is well settled that an injury-in-fact must be concrete. <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540 (2016). "A 'concrete' injury ... must actually exist", must be "real", and cannot be "abstract". <u>Id</u>. In response to the Court's pointed inquiries as to whether Plaintiffs had a concrete injury, Plaintiffs claim merely that they are subject to a "credible threat of prosecution" sufficient to confer upon them standing for a "pre-enforcement" action.[2] Plaintiffs assertions are as follows:

- Plaintiffs wish to carry a loaded, assembled handgun in public;

---

[1]     Similarly, Plaintiffs must demonstrate a likelihood of success on the merits to entitle them to the injunctive relief they seek.  They meet neither standard – for standing or injunctive relief – for the multiple reasons set forth herein and in the County's and Judge Wood's briefs previously filed with this Court in opposition to the Application and in support of their Motions to Dismiss. For purposes of this Post-Hearing Brief, the County and Judge Wood will not reiterate the Plaintiffs' deficiencies with respect to each of these elements, but instead, will focus upon the Court's questions and discussion concerning whether Plaintiffs have suffered an injury-in-fact

[2] <u>See</u>, <u>Wollschlaeger v. Governor, Fla</u>., 848 F.3d 1293, 1304 (11th Cir. 2017) (a plaintiff "c[an] bring a pre-enforcement suit when he 'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution.'" )

- O.C.G.A. §16-11-126 prohibits carrying such a loaded, assembled handgun in public without a valid Georgia weapons carry license (a "GWL");

- a person carrying an assembled, loaded handgun in public is subject to prosecution under O.C.G.A. §16-11-126(h);

- therefore, Plaintiffs argue, they are subject to a "credible threat of prosecution" if they do, in fact, carry a loaded, assembled handgun in public without a GWL.

As demonstrated below, these assertions are insufficient to establish standing sufficient to invoke this Court's subject matter jurisdiction such that this case must be dismissed.

### a. The Mere Existence of a Possible Criminal Violation is Insufficient to Establish a Credible Threat of Prosecution.

The County and Judge Wood acknowledge that when a "plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, **and** there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298 (1979)(citations omitted and emphasis added). However, significantly, under Babbit, the intended conduct must

5

be proscribed by a statute, **and** the plaintiff must show that there exists a credible threat of prosecution before the courts a court can find that there is a concrete injury. Evidence that the intended conduct is proscribed by statute without a showing of a credible threat of prosecution is insufficient to establish an injury-in-fact sufficient to confer subject matter jurisdiction upon the court. O'Shea v. Littleton, 414 U.S. 488, 494 (1974) (A plaintiff who challenges a statute must demonstrate a **realistic danger** of sustaining a **direct injury** as a result of the **statute's operation or enforcement.**

Multiple Supreme Court decisions emphasize that past enforcement action is a key factor when analyzing whether a plaintiff has shown a credible threat of enforcement in the future. In Susan B. Anthony List., Dreihaus, 572 U.S. 149, 164 (2014), "a history of past enforcement" was the primary reason the Court held the plaintiff's allegations of future enforcement sufficient to demonstrate an actual, concrete injury.  Similarly, in Steffel v. Thompson, 415 U.S. 452 (1974), the Court relied on "[t]he prosecution of petitioner's handbilling companion" when determining that a plaintiff's alleged threat of prosecution for distributing handbills at a shopping mall was credible enough to demonstrate an injury to establish standing. Id. at 459. More recently, the Court found a credible threat of prosecution in Holder v. Humanitarian Law Project, 561 U.S. 1 (2010), relying on the fact that

the government "charged about 150 persons with violating [a statute], and that several of those prosecutions involved the enforcement of the statutory terms at issue." Id. at 16 (citation omitted). In contrast, here, Plaintiffs have not established any meaningful history of enforcement of O.C.G.A. §16-11-126, much less 150 enforcement actions like in Humanitarian Law Project.

Indeed, the Complaint does not allege, nor have Plaintiffs established through submission of evidence, even sporadic enforcement. Notably, in Ellis v. Dyson, 421 U.S. 426 (1975), the plaintiffs challenging a Dallas loitering statute showed that "an average of somewhat more than two persons per day were arrested in Dallas during seven specified months in 1972 for the statutory loitering offense." Id. at 434. Yet, even that record of enforcement was deemed insufficient such that the Court remanded the case so the district court could make more factual findings to help determine whether a credible threat of prosecution *currently* existed. Id. at 434-35. Specifically, the Court directed the district court "to examine the current enforcement scheme" to see if a "genuine threat" existed. Id. at 434.  Plaintiffs certainly could not meet the standards emphasized through these representative cases as Plaintiffs have not alleged, nor have they offered, any evidence whatsoever of the current enforcement scheme as relates to O.C.G.A. §16-11-126.

Plaintiffs inability to satisfy the standing threshold is even more apparent when the entire statutory scheme surrounding O.C.G.A. §16-11-126 is examined. As pointed out in Judge Wood's Brief in Support of Motion to Dismiss and in this Court's Order on Motion for Temporary Restraining Order in Carter v. Kemp, No. 20-cv-1517, at 11-12, n. 4 (N.D.Ga. April 20, 2020), O.C.G.A. § 16-11-137(b) prohibits a person from being detained for the "sole purpose of investigating whether such person has a [GWL]."). Further, O.C.G.A. § 16-11-138 provides an "absolute defense" to any violation under O.C.G.A. § 16-11-126 for "defense of self or others." Considered together, O.C.G.A. § 16-11-138 and O.C.G.A. §16-11-137(b) shows that – as a matter of law – there is no present, realistic, or credible threat of prosecution for violation of O.C.G.A. 16-11-126 that arises from carrying a loaded operable handgun in public. That statutory scheme, coupled with the Plaintiffs' utter failure to offer any allegation or evidence of actual enforcement, is fatal to Plaintiffs' efforts to demonstrate standing such that this case must be dismissed.

Plaintiffs' efforts to rely upon the District Court's Opinion is Robinson v. Marshall, 2020 WL 1847128 (Dist. Ct., M.D. Alabama, April 12, 2020) are misplaced. In Robinson, the state sought rely upon assurances by state officials that the state would be not enforce certain recently enacted abortion restrictions in an effort to show that there was no credible threat of prosecution sufficient to confer

standings on the plaintiffs.  The District Court ruled that such assurances were not sufficient to show that there was no credible threat of prosecution.   The analysis as set forth above is not dependent on any assurances from state officials that violations of O.C.G.A. §16-11-126 will not be enforced.   Instead, Plaintiffs lack standing because, as demonstrated above, they have not met their burden to establish that there is a present, realistic, or credible threat of prosecution for violation of O.C.G.A. 16-11-126 that arises from carrying a loaded operable handgun in public.

Accordingly, Plaintiffs have failed to establish that they are suffering from a "credible threat of prosecution" sufficient to satisfy the "injury-in-fact" requirement of standing.  During the hearing, the Court asked how it was wrong in its decision in the Carter case.  The answer to that question is that the Court was spot on – just as in Carter, here, there is no concrete injury, no standing, no subject matter jurisdiction, and thus, this case should be dismissed..[3]  See Jacobson v. Florida Secretary of State, No. 19-14552 at *9 -10(11th Cir., April 29, 2020).

---

[3]      In addition to the threshold issue of standing that warrants the immediate dismissal of Plaintiffs' Complaint, multiple other reasons (jurisdictional and otherwise) that require dismissal of Plaintiffs' Complaint are addressed in the County's and Judge Wood's Motion to Dismiss, which the County respectively submits must be considered before the Court reaches any decision on the merits.

**B. <u>Judge Wood Is Not Saddled with the Burden to Prove That a
Temporary Injunction is the Least Restrictive Means Available to
Address the Public Health, Safety and Welfare Concerns arising
from the COVID-19 Pandemic.</u>**

At the Hearing, Plaintiffs suggested that the County and Judge Wood have
failed to satisfy their "burden" to show that the temporary suspension of acceptance
of GWL applications is the least restrictive means available to address this public
health concerns.   Such an argument is upside down and unavailing to Plaintiffs for
the following reasons:

**1. Judge Wood's Decision to Temporarily Suspend Processing
of GWLs Should Be Evaluated Under the Deferential
Standard Applicable to Emergencies.**

Plaintiffs' assertion that Judge Wood's decision to suspend acceptance of
applications for GWLs should be evaluated under either strict or intermediate
scrutiny is incorrect.

The "power to protect the public health lies at the heart of" the state's police
power.   <u>Lawton v. Steele</u>, 152 U.S. 133, 126 (1894).  The protection of the public
health "has sustained many of the most drastic exercises of that power, including
quarantines, condemnations, civil commitments, and compulsory vaccinations." <u>Id</u>.
And, in appropriate circumstances, states may, "with immunity, destroy the property
of a few that the property of the many and the lives of many more could be saved".

United States v. Caltex, 349 U.S., 154 (1953); see also Bowditch v. City of Boston, 101 U.S. 16, 18 (1879) ("There are many other cases… some of them involving the destruction of life itself – where the same rule is applied.  The rights of necessity are a part of the law").

As noted in Cherokee County's and Judge Woods' Joint Motion in Opposition to Plaintiffs Application, Jacobson v. Massachusetts, 197 U.S. 11 (1905) is instructive.  In Jacobson, the United States Supreme Court explained that "upon the principle of self-defense, of paramount necessity, a community has a right to defend itself against an epidemic of disease which threatens the safety of its members." Id., at 27.  Relying upon this principle of self-defense, the Supreme Court held that "the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to … restraint. Id. at 29.  The Court recognized that courts should interfere only when a community's power to protect itself against an epidemic is exercised in an "arbitrary, unreasonable manner:" Id., at 27-28, 36-37. Nowhere in Jacobson is the power of the state to restrict rights in response to an epidemic limited to legislative bodies as asserted by Plaintiffs.

Also instructive in the evaluation of the state's emergency powers is a case out of the Eleventh Circuit, Smith v. Avino, 91 F. 3d 105 (11th. Cir. 1996). Although Avino was abrogated, on other unrelated grounds by Steel Co. v. Citizens

for a Better Environment, 523 U.S. 83 (1998), the principles contained in <u>Avino</u> are still persuasive.   In <u>Avino</u>, the 11th Circuit recognized the principle enumerated in <u>Jacobson</u> that in an emergency situation, "fundamental rights such as the right to travel and free speech may be temporarily limited or suspended.  <u>Id.</u> at 109.

Here, that is all that has occurred – a temporary, limited, suspension of the ability to obtain a GWL.  Assuming solely for the sake of argument that there exists a constitutional right to carry a handgun or a constitutional right to apply for or obtain a GWL, such rights are subject to such temporary suspension.  Thus, even if (again, for the sake of argument) "under normal circumstances and as a general proposition" Judge Wood is constitutionally bound to accept and process applications for GWLs, "the circumstances existing at th[is] time [a]re not usual, nor [a]re they normal." <u>Id.</u> at 109.  Under the present circumstances of the existing global COVID-19 pandemic, "governing authorities must be granted proper deference and wide latitude necessary for dealing with the emergency." <u>Id</u>.

In evaluating emergency measures adopted in response to emergencies such as the COVID-19 pandemic, a court's review of the emergency measures should be limited to a determination of whether the actions were taken "in good faith and whether there was a factual basis for the decision that the restrictions imposed were necessary to maintain order". <u>Id</u>. at 109 (<u>quoting</u> <u>United States v. Chalk</u>, 441 F. 2d

1277 (4th Cir. 1971)); see also Jacobson v. Commonwealth of Massachusetts, 197

U.S. 11, 28 (1905)(individual rights secured by the Constitution may be restricted

during a public health emergency if it can be shown that the restrictions bear a "real

or substantial relation" to protecting the public during the public health emergency).

This principle, and deferential standard of review, has been recognized

recently in Hickox v. Christie, 205 F. Supp. 3d 579 (D.M.J. 2016).  In Hickox, the

District Court of New Jersey, relied upon Jacobson (and recognized a standard

similar to that enumerated in Avino) when it recognized that "the state is entitled to

some latitude…in its prophylactic efforts to contain" a communicable disease.

Hickox, 205 F. Supp. at 584.  In affirming a quarantine of a nurse who had been

treating EBOLA patients, the New Jersey Court noted, consistent with Jacobson and

Avion, that to permit the plaintiff's constitutional challenge to the quarantine would

be "a judicial second-guessing of the discretionary judgments" of the state in

determining how best to protect the public health.   Id. at 594.

Plaintiffs make no effort to engage in the analysis demanded by Jacobson and

Avino, instead, they merely assert that the Judge's decision to suspend acceptance

of applications for GWLs infringes upon (and in fact destroys) Plaintiffs Second

Amendment rights.   However, as demonstrated in Avino and Jacobson, the

identification of a limitation on a constitutional right, even a fundamental right, is

only the beginning of the inquiry, because, in an emergency situation, such rights "may be temporarily limited or suspended.  See Avino 91 F. 3d at 109.   Granting to Judge Wood the proper deference and wide latitude as required by Avino in emergency situations, it is without question that his actions were taken in good faith are supported by an appropriate factual basis.

### 2. Plaintiffs Have Put Forth No Evidence to Show that the Temporary Suspension of GWLs is Either in Bad Faith or Unsupported by an Appropriate Factual Basis.

Judge Wood's decision to temporarily suspend the acceptance of GWLs during the COVID-19 pandemic clearly satisfies the deferential standard required by Jacobson and Avino in emergency situations.  Plaintiffs have not alleged, nor have they put forth any evidence upon which this Court could find otherwise. Further, Plaintiffs' repeated argument that Judge Wood has failed to put forth evidence that his actions were proper turns the burden of persuasion at the preliminary injunction stage on its head and must be rejected.

A **plaintiff** seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, (2008). In the 11th Circuit, an "**injunction is an extraordinary and**

**drastic remedy not to be granted**, **unless the movant clearly established the 'burden of persuasion' as to the four requisites**." Horton v. City of Augustine, 272 F. 3d 1318, 1326 (11th Cir. 2001) (emphasis added).

In the context of the proper, deferential, standard of review (see Section II.B.1, above), Plaintiffs, not Judge Wood nor Cherokee County, bear the burden of putting forth evidence that *clearly establishes* that they are likely to succeed establishing that Judge Wood's decision to temporarily suspend acceptance of GWLs was taken in bad faith or that it lacks a real and substantial relation to the protection of public health. See Jacobson, 197 U.S. at 28; Avino, 91 F. 3d at 109.   Plaintiffs have failed to produce such evidence.

In fact, the only evidence before the Court as to either the Judge's motivation or the factual basis for his decision to temporarily suspend the acceptable of GWL applications is Judge Wood's Affidavit (Doc. No. 28-1).   In his affidavit, Judge Wood avers that he relied upon Governor Kemp's Declaration of Emergency, the Chief Justice of the Georgia Supreme Court's Declaration of Judicial Emergency, guidance provided by Centers for Disease Control and Prevention, and Governor Kemp's Shelter in Place Order in making his initial decision to suspend acceptance of GWL's and his subsequent decision to continue the suspension. (Doc. No. 28-1

¶¶ 37-38).[4]   Further, Judge Wood considered the GWL application procedures (wherein an applicant stands immediately next to a staff member for an average of three minutes (Doc. No. 28-1, ¶¶10, 11), the staff member guides the applicants' hands/fingers and each fingertip onto a glass plate to capture fingerprints (Doc. No. 28-1, ¶10), the applicant is photographed without a mask (Doc. No. 28-1, ¶¶12, 13), the applicant sits approximately 3-4 feet away from his staff member for the photograph (Doc. No 28.1, ¶14); the applicant signs an electronic keypad with a common stylus available to all applicants (Doc. No. 28.1, ¶16), and the applicant spends approximately five minutes with a staff member reviewing the entire application in a small room with limited space for physical distancing (Doc. No. 28-1, ¶¶17, 18)), and, knowing that he could not continue this process while at the same time satisfying the physical distancing recommendations as adopted by the Centers

---

[4]      Notably, while Plaintiffs attempted to discount Jacobson's application in a public health crisis by arguing that it concerned the action of the legislature, there is no such limitation in Jacobson, and importantly, Judge Wood's decision is based upon, and supported by, the head of the executive and judicial branches of the State of Georgia, the Probate Judges Council of Georgia, and the leading national public health agency, all of which have reached decisions and recommendations after thorough debate and deliberation among public health experts. Judge Wood's decision to temporarily suspend acceptance of applications for GWLs is most assuredly not, as Plaintiffs would have you think, the lone and unsupported decision of a rogue Judge.

for Disease Control and Prevention and the Governors Shelter in Place Order, decided to temporarily suspend the acceptance of GWLs.

The **only** evidence offered by Plaintiffs in an effort to cast doubt upon the propriety of Judge Wood's decision to temporarily suspend acceptance of GWLs is the (literally) eleventh-hour submission of Plaintiffs' lawyer, the Declaration of John Monroe (Doc. No. 30-7). This declaration, which contains nothing but hearsay, appears to have been tendered in a futile effort to show that there were less restrictive means available to Judge Wood that would have allowed him to continue processing GWLs while, at the same time, maintaining appropriate physical distancing. Specifically, the Monroe Declaration claims that a UPS Store in Atlanta, is collecting and processing fingerprints without touching, or coming into close contact with applicants. This 'evidence' is offered to show either that Judge Wood could conform his procedure to those undertaken by the UPS Store, or that Judge Wood could send applicants to Atlanta to be fingerprinted at the UPS Store. In either event, this 'evidence' is wholly insufficient to satisfy Plaintiffs burden of persuasion.

The Monroe Declaration is, however, entirely dependent upon of hearsay. While a court may rely upon hearsay at the preliminary injunction stage (see Levi Strauss. & Co. v. Sunrise International Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995)) such hearsay evidence, however, due to its unreliability, can be misleading

and unfairly prejudicial.  U.S. Steel, LLC, v. Tieco, Inc., 261 F.3d 1275, 287 (11th Cir. 2001).  Such has proven exactly to be the case here with respect to the Monroe Declaration.   Yesterday, Judge Wood and Cherokee County filed their Joint Brief in Opposition to Plaintiffs Evidence (Doc. No. 34).   Attached thereto was a Declaration from Judge Wood (Doc. No. 34-1).  (Cherokee County and Judge Wood adopt and incorporate the arguments set forth in the Joint Brief in Opposition to Plaintiffs' Evidence and the accompanying Declaration of Judge Keith Wood as if fully set forth and attached hereto).

In this Declaration, Judge Wood avers, under oath, that he contacted a UPS Store in Cherokee County and was informed that the Store would not, in fact, accept individuals for fingerprinting – thus, calling the reliability of the Monroe Declaration into doubt and raising the following questions:  Did the UPS Store in Atlanta cease fingerprinting individuals after Mr. Monroe's call (the Monroe Declaration indicates that the UPS Store in Atlanta was contacted on April 15)?  Was the anonymous individual at the UPS Store referenced in the Monroe Declaration correct?  Is this the only UPS Store accepting individuals for fingerprinting?  Is the UPS Store conforming to CDC Guidelines and the Shelter in Place guidelines?  Answers to none of these questions are available to the Court and leave the Monroe Declaration lacking in certainty and credibility.

The Monroe Declaration provides the Court with no evidence that Judge Woods has a contract or other qualifying relationship with the UPS Store in Atlanta, no evidence that the UPS Store is processing applications consistent with Shelter in Place regulations, CDC Guidelines, or the standards required for a GWL, no evidence (other than the use of "touchless" fingerprinting) that the UPS Store is acting with any concern for public health, safety welfare, no evidence that the UPS Store is providing such services after April 15, 2020, and no evidence as to just how far a Cherokee County citizen would be expected to travel into Atlanta to obtain these fingerprints during the existence of a statewide Shelter in Place order.  Most importantly, the Monroe Declaration provides the Court with no evidence upon which it could conclude that Plaintiffs are likely to succeed in showing that Judge Wood's decision to temporarily suspend acceptance of applications for GWLs was motivated by bad faith or that it bears no relation to the protection of public health during the COVID-19 pandemic.  Plaintiffs have plainly failed to meet ***their*** burden in this regard.

As a result, even if the Court were to depart from its holding in the Carter case and proceed to a consideration of the merits of this matter, Plaintiffs cannot meet their burden to demonstrate an entitlement to injunctive relief and cannot overcome the significant discretion afforded to officials during times of national and public

19

health crisis reflected in the Jacobson line of cases.  For this additional reason, the Application should be denied.[5]

### III.   CONCLUSION

For the reasons set forth above, in addition to all of the other reasons asserted in their Briefs in Support of their Motions to Dismiss and in their Joint Brief in Opposition to Plaintiffs' Application, Plaintiffs' Complaint should be immediately dismissed for lack of subject matter jurisdiction.  Even if the Court looks beyond the jurisdictional issues and the other grounds for dismissal in the Motions to Dismiss, Plaintiffs' Application for injunctive relief must be denied on the merits due to Plaintiffs' failure to meet its burden to establish the four elements necessary to demonstrate the entitlement to the extraordinary relief requested.

---

[5]   While Plaintiffs fail to meet their burden with respect to both the County and Judge Wood, it is notable that in response to questions from the Court as to the appropriateness of the County as a party, the Plaintiffs acknowledged that the County was included as a party as a "belt and suspenders" approach and conceded that the County could be "put aside" for purposes of the Application.  Indeed, the County is not a proper party as detailed in its Motion to Dismiss, and further because the employees of a Constitutional Officer such as Judge Wood are not employees of Cherokee County (see Manders v. Lee, 338 F.3d 1204 (11th Cir. 2003) (en banc) and Grech v. Clayton County, 335 F.3d 1326 (11th Cir. 2003) (en banc)) and pursuant to O.C.G.A.§16-11-173, the County is precluded from engaging in any activity related to the regulation of firearms.

Respectfully submitted, this 29th day of April, 2020.

**JARRARD & DAVIS, LLP**

/s/ *Patrick D. Jaugstetter*          .
ANGELA E. DAVIS
Georgia Bar No. 240126
adavis@jarrard-davis.com
PATRICK D. JAUGSTETTER
Georgia Bar No. 389680
patrickj@jarrard-davis.com
Attorneys for Defendants Cherokee County
and Judge Keith Wood


222 Webb Street Cumming, Georgia 30040
(678) 455-7150 (telephone)
(678) 455-7149 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed CHEROKEE COUNTY, GEORGIA'S AND JUDGE KEITH WOOD'S JOINT POST HEARING BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR IN THE ALTERNATIVE, ISSUANCE OF A PRELIMINARY INJUNCTION AND IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record:

I further certify that the above and foregoing meets the requirements set forth in L.R. 5.1(C) and has been prepared using Times New Roman 14-point font.

This 29th day of April, 2020.

**JARRARD & DAVIS, LLP**

222 Webb Street
Cumming, Georgia  30040
(678) 455-7150 (telephone)
(678) 455-7149 (facsimile)
adavis@jarrard-davis.com
patrickj@jarrard-davis.com

*/s/ Patrick D. Jaugstetter*
ANGELA E. DAVIS
Georgia Bar No. 240126
PATRICK D. JAUGSTETTER
Georgia Bar No. 389680

Attorneys for Defendant Cherokee County/Keith Wood